46 P.3d 431

BIKE FASHION CORP., an Arizona corporation, as assignee for Lorne Kramer; Southam Properties, Inc., an Arizona corporation; and Prospect Holdings, Ltd., an Arizona corporation, as assignee and successor in interest of Dennis Porter, Syndicate Enterprises, Ltd., Donald Fast, Fast Holdings, Inc., and Harvey Gould (or,) alternatively, those persons individually in the event assignments were ineffective, individually, and, if necessary, derivatively on behalf of the Bell 20/21 Partnership, Plaintiffs–Appellants,

v.

Robert F. KRAMER and Ann M. Kramer, husband and wife; Mount Royal Management, Inc., a Delaware corporation; Regis Properties, Inc., an Arizona corporation; Freeport Financial Corp., an Arizona corporation; Capital Development Corp., an Arizona corporation; M.L. Sweeney; R.C. Romero; Alport Holdings, Inc., a Nevada corporation; Wardley Properties, Inc., an Arizona corporation; A.K. Basu; Thomas Kitching, Defendants–Appellees.

Robert F. Kramer and Ann M. Kramer, husband and wife; Regis Properties, Inc., an Arizona corporation; Mount Royal Management, Inc., a Delaware corporation, Defendants–Appellants,

v.

Bike Fashion Corp., an Arizona corporation, as assignee for Lorne Kramer; Southam Properties, Inc., an Arizona corporation; and Prospect Holdings, Ltd. an Arizona corporation, as assignee and successor in interest of Dennis Port-

er, Syndicate Enterprises, Ltd., Donald Fast, Fast Holdings, Inc., and Harvey Gould (or,) alternatively, those persons individually in the event assignments were ineffective, individually, and, if necessary, derivatively on behalf of the Bell 20/21 Partnership, Plaintiffs–Appellees.

No. 1 CA–CV 01–0300.

Court of Appeals of Arizona, Division 1, Department C.

May 16, 2002.

---

* Pursuant to Ariz. Const. Article VI, Section 3, the Honorable Edward C. Voss, Chief Judge of

the Court of Appeals, Division One, was designated to sit on this case.

Mohr, Hackett, Pederson, Blakley & Randolph, P.C. By Daniel Beeks and Russell Piccoli, Phoenix, Attorneys for Plaintiffs–Appellants–Cross–Appellees.

Harris Law Firm, P.C. By John D. Harris, Phoenix, Attorneys for Defendants–Appellees–Cross–Appellants.

Mariscal, Weeks, McIntyre & Friedlander, P.A. By Gary L. Birnbaum and Kelley Lewis, Phoenix, Attorneys for Defendants–Appellees Alport, Wardley, Basu and Kitching.

## OPINION

EHRLICH, Judge.

¶ 1 Bike Fashion Corp., Southam Properties and Prospect Holdings ("Bike") appeal an adverse judgment and denial of their motion for new trial. Robert F. and Ann Kramer ("Kramer") and Mount Royal Management appeal the denial of their request for attorneys' fees. We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

*FACTS AND PROCEDURAL HISTORY*

¶ 2 In 1987, Capital Development, a corporation controlled by William Dinneen, purchased property at Bell Road and 21st Street in Phoenix ("the Property"). *Bike Fashion Corp. v. Kramer*, 1 CA–CV–97–0499 (Ariz. App. Jan. 26, 1998), mem. decision at 3. Dinneen and Kramer solicited investors to form a general partnership, Bell 20/21, to purchase the Property from Capital Development. *Id.* Bike became a general partner in the Bell 20/21 partnership, as did Regis Properties, a corporation controlled by Kramer. *Id.* The partnership documents designated Freeport Financial Corporation, a corporation controlled by Dinneen, as managing partner. Before consummating the sale of the Property to Bell 20/21, however, Dinneen and another corporation controlled by Kramer, Mount Royal Management, secretly raised the Property's price by $173,000. *Id.*

¶ 3 Once the Bell 20/21 partnership owned the Property, the partners disagreed about its disposition. While Kramer and Dinneen wanted to develop the Property, other partners sought a buyer. *Id.* In either situation, any conveyance of the Property required the consent of the partners holding 51% of the profits and losses of the Bell 20/21 partnership. *Id.*[1]

¶ 4 Kramer and Dinneen formed a new partnership, Bell Place Partners. *Id.* They then used the Property to secure loans and sold the Property to their new partnership, doing so without the consent of the Bell 20/21 partnership. *Id.*

¶ 5 Meanwhile, Bike, unaware of the Property's sale, believed it had found a potential buyer for the Property. *Id.* at 4. However, when the potential buyer learned from the newspaper of the Property's sale, the buyer withdrew. *Id.*

¶ 6 Eventually Bell 20/21 regained the Property, but Bike sued for an accounting. *Id.* The complaint asserted five claims for recovery: accounting, breach of implied covenant of good faith and fair dealing, aiding and abetting the breaches of implied covenants, breach of contract against Regis Properties, and fraudulent transfer and conveyance. *Id.* The trial court ruled that claims two, three and four sounded in tort and were barred by the statute of limitations. *Id.* It therefore limited the bench trial to the accounting claim, about which it concluded that the "partners who benefitted from the undisclosed $173,000 markup violated the fiduciary duty owed to the other partners." *Id.*[2] Supporting this conclusion were the court's findings that Kramer was the alter ego of Mount Royal Management and of Regis Properties.

¶ 7 On appeal, this court determined that the trial court had erred in dismissing Bike's claims for breach of contract and remanded the case for the reinstatement of those claims. *Id.* It also concluded that there was insufficient evidence for the trial court to pierce the corporate veil between Kramer and Mount Royal Management. *Id.* Kramer did not challenge the trial court's finding concerning his alter-ego relationship to Regis Properties.

¶ 8 On remand, Bike claimed that Kramer had breached the implied covenant of good faith and fair dealing by assisting Freeport Financial Corporation, the managing partner, in transferring the property without the consent required by the partnership agreement. Kramer responded that the agreement only barred the managing partner, not him as a general partner, from conveying the Property without the requisite consent.

¶ 9 The jury returned a verdict in favor of Kramer. The court denied Bike's motion for new trial and entered judgment for Kramer.

1. The partnership certificate stated "[t]he right and responsibility to manage and conduct the partnership affairs including the right to sell, transfer, assign, convey or encumber the partnership assets shall be vested exclusively in Freeport Financial Corporation, an Arizona corporation, the managing partner herein. The managing partner, Freeport Financial Corporation, an Arizona corporation, must first obtain consent of the partners holding at least fifty-one percent (51%) of the profits and losses of the partnership before it can be said to be vested to the right to ... (iv) sell, transfer, convey or hypothecate any and/or all of the partnership property."

2. Bike admitted in the pre-trial statement that the conveyance claim constituted part of its accounting action.

It denied Kramer's request for attorneys' fees.

¶ 10 The parties appealed. Bike raises one issue: Whether it is entitled to a new trial because the court incorrectly instructed the jury that there could be no violation of the covenant of good faith and fair dealing if there was an express contract provision relating to the same subject. Kramer and related parties raise three issues: Whether the trial court erred in finding Regis Properties to be Kramer's alter ego; whether the decision of this court reversing the trial court's finding that Mount Royal Management was Kramer's alter ego served to void the judgment against Mount Royal; and whether the trial court erred in denying Kramer's application for attorneys' fees and costs as the prevailing party in the litigation.

*DISCUSSION*

A. *Implied Covenant of Good
Faith and Fair Dealing*

██ ¶ 11 Over Bike's objection, the trial court instructed the jury as follows:

A party to a contract is not liable for breach of an implied contract provision where there is an express written contract provision between the parties relating to the same subject.

The court also instructed the jury regarding the implied covenant of good faith and fair dealing, stating,

Every party to a contract has a duty to act fairly and in good faith. This duty is implied by law and need not be in writing.

Bike claims that the instruction regarding implied contract eviscerated the instruction regarding implied covenant of good faith and fair dealing. It maintains that it therefore is entitled to a new trial, and we agree.

██ ¶ 12 While a trial court is not required to instruct the jury on every nuance of law suggested by counsel, *Fridena v. Evans*, 127 Ariz. 516, 522, 622 P.2d 463, 469 (1980), it must refuse to give an instruction that does not correctly state the law. *Durnin v. Karber Air Conditioning Co.*, 161 Ariz. 416, 419, 778 P.2d 1312, 1315 (App. 1989). This court will reverse a verdict if an instruction was erroneous and prejudicial to

the appealing party's substantial rights. *Link v. Pima County*, 193 Ariz. 336, 341 ¶ 16, 972 P.2d 669, 674 (App.1998); *see AMERCO v. Shoen*, 184 Ariz. 150, 159, 907 P.2d 536, 545 (App.1995)("Prejudicial instructions are those which, by statement or omission, support a resolution that is harmful to the complaining party and contrary to law.").

██ ¶ 13 Arizona "law implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986); *see Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 76, 985 P.2d 556, 561 (App.1998); *Diagnostic Lab. v. PBL Consultants*, 136 Ariz. 415, 419, 666 P.2d 515, 519 (App.1983). "[I]mplied terms are as much of a contract as are the express terms." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490 ¶ 59, 38 P.3d 12, 28 (2002). The purpose of such terms is so "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings*, 151 Ariz. at 153–54, 726 P.2d at 569–70. This obligation "preserve[s] the spirit of the bargain rather than the letter" and guarantees the protection of the parties' reasonable expectations, such being "the basic purpose of contract law." 3A CORBIN ON CONTRACTS § 654A at 105 (Lawrence A. Cunningham & Arthur J. Jacobson eds., Supp. 1999).

██ ¶ 14 The law on the relationship between a contract's express terms and the implied covenant of good faith and fair dealing is turbid. The general rule is that an implied covenant of good faith and fair dealing cannot directly contradict an express contract term. *See Scheck v. Burger King Corp.*, 798 F.Supp. 692, 697 (S.D.Fla.1992)("the covenant of good faith and fair dealing will not be implied in contradiction of an express contractual provision"); *Zygar v. Johnson*, 169 Or.App. 638, 10 P.3d 326, 330 (2000)("the implied covenant [of good faith and fair dealing] cannot contradict an express contractual term."); *Third Story Music, Inc. v. Waits*, 41 Cal.App.4th 798, 48 Cal.Rptr.2d 747, 753 (1995)("no [covenant of good faith and fair dealing] can be implied ... which would re-

sult in the obliteration of a right expressly given under a written contract")(quoting *Gerdlund v. Elec. Dispensers Int'l,* 190 Cal. App.3d 263, 235 Cal.Rptr. 279 (1987)); *Idaho First Nat'l Bank v. David Steed & Assocs.,* 121 Idaho 356, 825 P.2d 79, 83 (1992)(implied covenant of good faith and fair dealing cannot contradict express terms in contract). However, "[i]nstances inevitably arise where one party exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain." *Wells Fargo Bank,* 201 Ariz. 474, 492 ¶ 66, 38 P.3d 12, 30 (quoting *Southwest Sav. & Loan v. SunAmp Sys.,* 172 Ariz. 553, 558, 838 P.2d 1314, 1319 (App. 1992)).[3] Thus, Arizona law recognizes that a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain. *See id.* at ¶ 67.

¶ 15 In applying these principles, the trial court erred. The "instructions given create[d] substantial doubt as to whether or not the jury was properly guided in its deliberations." *Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 504, 917 P.2d 222, 233 (1996)(quoting *Melancon v. USAA Cas. Ins. Co.,* 174 Ariz. 344, 347, 849 P.2d 1374, 1377 (App. 1992)).

¶ 16 Kramer misplaces reliance on *Chanay v. Chittenden,* 115 Ariz. 32, 35, 563 P.2d 287, 290 (1977), a case standing for the proposition that "[t]here can be no implied contract where there is an express contract between the parties in reference to the same subject matter." This court wrote in *Loffa v. Intel Corp.,* 153 Ariz. 539, 546, 738 P.2d 1146, 1153 n. 3 (App.1987), of the inapplicability of this proposition when the term "implied as a matter of fact from all the circumstances [had] bearing on the intention of the parties...." While the court in *Chanay* declined to consider an "equitable theory" that one party insisted would "override as a matter of law"

an unambiguous employment contract, 115 Ariz. at 35, 563 P.2d at 290, Bike contends that Kramer breached the implied covenant of good faith and fair dealing by assisting Freeport Financial Corporation, the managing partner, in conveying the Property without the requisite partner consent. Specifically, Bike asserts that one of the reasonable expectations of the parties' pursuant to the partnership agreement was that, if the managing partner could not convey the property without the required partner consent, neither could a general partner such as Kramer assist or facilitate the managing partner in executing that proscribed transfer. Because such an assertion bears on the parties' intentions regarding their reasonable expectations concerning the partnership agreement, *Chanay* is inapposite.

¶ 17 Contrary to Kramer's contention, a party may breach the implied covenant of good faith and fair dealing even if the express terms of the contract speak to a related subject. In *SunAmp Systems,* 172 Ariz. at 559, 838 P.2d at 1320, the court examined whether Southwest Savings wrongfully exercised its contractual authority to freeze SunAmp's credit line for a "reason inconsistent with SunAmp's 'justified expectations' " under the contract. Although the court determined that "SunAmp had no justifiable expectation that a reasonable lender would [have] act[ed] differently," *id.* at 561, 838 P.2d at 1322, the court nevertheless examined whether Southwest Savings had breached the covenant of good faith and fair dealing despite the existence of a contract term granting Southwest Savings discretion to freeze SunAmp's credit line. Because a party can breach the covenant of good faith and fair dealing if the contract speaks to the same subject, when the express terms are presumed to be the best indicator of the parties' reasonable expectations, it follows that a party may breach the covenant even if the express terms speak to a "related subject."

---

**3.** "A party enjoys discretion in the relevant sense when the express terms of the contract do not specify how a party is to behave in all circumstances." STEVEN J. BURTON & ERIC G. ANDERSEN, CONTRACTUAL GOOD FAITH: FORMATION, PERFORMANCE, BREACH, ENFORCEMENT § 1.2.1 at 4 (1995). Such is the situation in this case.

¶ 18 Nor does the implied covenant of good faith and fair dealing contradict any express term in either the partnership agreement or partnership certificate. Rather, an implied covenant reiterates the express stipulation of the partnership agreement and partnership certificate that precluded Kramer from participating or assisting in any conveyance of the Property without the consent of the partners holding 51% of the profits and losses of the partnership. Indeed, this implied covenant remedies a circumstance in which one party has acted "in such a way as to deny the other[s] a reasonably expected benefit of the bargain." *SunAmp,* 172 Ariz. at 558, 838 P.2d at 1319. Logically, discretion "unforeclosed" by the contract's express terms cannot be contradicted by any covenant of good faith and fair dealing prohibiting the same "unforeclosed" conduct. Therefore, the trial court erred in instructing the jury so as to permit the jurors to conclude that a party to a contract is not liable for breach of an implied covenant of good faith and fair dealing when there is an express contract provision relating to the same subject.[4]

¶ 19 The error in the instructions was compounded and of substantial prejudice to Bike because Kramer extensively argued to the jury the contention that there could be no breach of contract for those actions the contract did not expressly prohibit.[5] We therefore reverse the trial court's denial of Bike's motion for a new trial and remand for proceedings in accordance with this opinion.

**4.** Even if the instruction regarding an implied contract stated a correct legal principle, it had no application to the legal issue whether the defendants breached an implied covenant of good faith and fair dealing. Underscoring this point, one author has stated that the "obligation of good faith is 'constructive' rather than 'implied'." 3A CORBIN ON CONTRACTS § 654A at 106. Explaining this phraseology is the idea that the *obligation of good faith is not implied at all but is in fact imposed by statute, see* U.C.C. § 1–203 (1998), or common law. *Id.* ("Our unwillingness to allow people to disclaim the obligation of good faith shows that the obligation cannot be implied, but is law imposed.") (citation omitted).

**5.** In closing argument, Kramer stated:
Now, the plaintiffs, I told you they don't have an implied contract count that they can pursue. At least from my perception, they have a

### B. Regis Properties as Kramer Alter Ego

¶ 20 Kramer asserts that the trial court erred in finding Regis Properties to be his alter ego, but this issue is precluded because it could have been raised by Kramer on the first appeal as he did the trial court's determination that Mount Royal Management was his alter ego. Appeals "cannot be allowed piecemeal" and thus issues that "should have been raised on the first appeal may not be presented to nor considered by this court on the second appeal." *Hurst v. Hurst,* 1 Ariz.App. 227, 229, 401 P.2d 232, 234 (1965) (citation omitted).

### C. Judgment Against Mount Royal Management

¶ 21 In the first trial, the court entered judgment against Mount Royal Management for $43,725 plus interest for its role in the secret markup of the price when the Property was sold to Bell 20/21. Because Mount Royal was not a partner in Bell 20/21, Kramer asserts that its only connection to this litigation is through him.

¶ 22 After this court reversed for lack of sufficient evidence the finding that Mount Royal served as Kramer's alter ego, upon remand Kramer failed to pursue the contention he now raises regarding the judgment against Mount Royal. The argument therefore has been waived. *See Dugan v. Fujitsu Bus. Communications,* 188 Ariz. 516, 521, 937 P.2d 706, 711 (App.1997); *Sahf v. Lake Havasu City Ass'n for the Retarded,* 150 Ariz. 50, 53, 721 P.2d 1177, 1180 (App.1986).

written contract that they can pursue. Unfortunately, what are they going to sue on on [sic] a written contract, because the written contract says Freeport Financial's the managing partner? So how can they sue Regis or Mount Royal for breach of a contract when that wasn't his responsibility and that wasn't something he was prohibited from doing?
Kramer ended his closing argument by insisting: You'll see there that they—these partners could not have had an understanding that no partner could transfer the property because there were no understandings that were available to the partners other than what was in this document [referring to the partnership agreement and certificate of general partnership]. And this document says only Freeport can transfer the property.

### D. Denial of Kramer's Application for Attorneys' Fees and Costs

¶ 23 Kramer appeals the trial court's denial of attorneys' fees. He claims entitlement pursuant to the provision in the Bell 20/21 partnership agreement giving the prevailing party fees and costs expended for litigation between the parties. However, because of the preceding analysis and disposition, Kramer has not been determined to be the prevailing party in this litigation.

### CONCLUSION

¶ 24 For the preceding reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

CONCURRING: PHILIP HALL, Judge.

BARKER, Judge, concurring.

¶ 25 I join fully in parts B, C and D of the majority decision. I concur with the result in part A, dealing with the implied covenant of good faith and fair dealing, because I believe the result is required by the Arizona Supreme Court's recent ruling in *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 490–93, ¶¶ 59–70, 38 P.3d 12, 28–31 (2002), which was decided after the trial of this matter.