NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CHAD GAMMAGE, *Appellant,*

*v.*

AURORA LOAN SERVICES, INC., *Appellee.*

No. 1 CA-CV 13-0172
FILED 03/13/2014

Appeal from the Superior Court in Maricopa County
CV2011-098920
The Honorable Mark F. Aceto, Judge

**AFFIRMED**

COUNSEL

Chad Gammage, Scottsdale
*Appellant In Propria Persona*

Akerman, LLP, Denver, CO
By Justin D. Balser and Ashley E. Calhoun
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Michael J. Brown joined.

---

**C A T T A N I,** Judge:

¶1          Chad Gammage appeals from the superior court's judgment in favor of Aurora Loan Services, Inc. ("ALS"). For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2          In May 2006, First Magnus Financial Corporation extended a $360,000 loan secured by a deed of trust to Gammage to refinance his home. In July 2008, Gammage stopped making loan payments, even though he had the funds to make them, intending that his default would result in a loan modification. After receiving a notice of default, he retained legal counsel and began the loan modification process. The lender scheduled a foreclosure sale for May 2009 and provided notice to Gammage.

¶3          In April 2009, ALS, which was servicing Gammage's loan, offered Gammage a temporary Workout Agreement. Gammage understood that this Workout Agreement was temporary and not the permanent loan modification he was seeking. Under the Workout Agreement, he was required to demonstrate an ability to make payments. ALS agreed to forbear foreclosure during the process, and Gammage agreed to make the payments as set out in the agreement. Gammage made three payments under the Workout Agreement, but failed to make the final payment of $22,043. Despite Gammage's failure to make the final payment, ALS agreed to review updated financial documents to determine whether to go forward with a loan modification. Gammage sent ALS the documents in July 2009.

¶4          On August 5, 2009, Gammage received an email from his legal counsel stating that Gammage had been approved by ALS for a loan modification. The email represented that Gammage would receive a "new terms package" to review and execute by September 1, 2009, and that a payment of $1,312.53 would be due by that same date. But neither

Gammage nor his legal counsel ever received a loan modification package with new terms from ALS. Instead, Gammage's legal counsel received a letter from ALS dated August 5, 2009 stating that Gammage's loan modification request had been denied because ALS had received notification of Gammage's withdrawal of his request. The letter was addressed to "Chadwick R. Gammage C/o Neil W. Thomson."

¶5       In a letter dated August 10, 2009, Gammage's legal counsel asked ALS for clarification, stating that Gammage had not requested that his loan workout option be withdrawn, and that ALS's letter directly contradicted the information provided by an ALS employee. ALS responded on August 12, 2009 with a computer-generated letter, which stated "a response addressing your request/concerns is being prepared and will be sent under separate cover," but no further response followed. In September 2009, Gammage's property was sold at a foreclosure sale. At the time of the sale, the value of the home was at least $200,000 less than the amount owed.

¶6       In October 2009, Gammage sued ALS for declaratory judgment, specific performance, and a temporary restraining order. During the course of litigation, ALS agreed to permit Gammage to stay in the property until mid February 2010 in exchange for Gammage's dismissal of the matter with prejudice. Gammage agreed to this settlement, but did not execute the stipulated dismissal. The court dismissed the matter without prejudice for lack of prosecution.

¶7       In March 2010, Gammage sued his legal counsel for malpractice, alleging a failure to follow up with ALS regarding the termination of the loan modification process. Gammage testified at trial in that matter that he did not receive notice of ALS's August 5, 2009 letter until after the foreclosure sale, and had he known there was a problem with the loan modification process, he could have cured the arrearage because he had the necessary funds to do so. The jury found in favor of Gammage and allocated fault for the foreclosure of Gammage's home with Gammage 0% at fault, legal counsel 100% at fault, and ALS 0% at fault.

¶8       In September 2011, Gammage sued ALS in the current action for negligence, breach of contract, intentional and/or negligent infliction of emotional distress, negligent supervision, and breach of duty of good faith and fair dealing. ALS moved to dismiss Gammage's complaint pursuant to Rule 12(b)(6) of the Arizona Rules of Civil Procedure for failure to state a claim upon which relief can be granted. After full

3

briefing, the superior court denied ALS's motion to dismiss, and ALS subsequently answered the complaint.

¶9　　　　On September 26, 2012, five days after the close of discovery, Gammage's counsel withdrew from the case. On September 28, 2012, the superior court held a telephonic conference to set a trial date and ordered that any dispositive motions be filed on or before October 31, 2012.

¶10　　　　On October 31, 2012, ALS filed a motion for summary judgment as to all of Gammage's claims. ALS sent Gammage a copy of its motion, along with a Separate Statement of Material Facts in Support of the Motion for Summary Judgment, a Request for Judicial Notice in Support of the Motion for Summary Judgment, and the Declaration of Justin Balser in Support of the Motion for Summary Judgment. Gammage did not file a response to these filings. In December 2012, the superior court granted ALS's motion for summary judgment, finding that ALS "ha[d] established entitlement to judgment as a matter of law."

¶11　　　　Gammage filed a motion to set aside summary judgment under Rule 60(c) of the Arizona Rules of Civil Procedure based on surprise and excusable neglect. ALS opposed Gammage's motion to set aside. The superior court denied Gammage's motion and directed entry of final judgment in ALS's favor.

¶12　　　　Gammage timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).[1]

## DISCUSSION

¶13　　　　Gammage contends that the superior court erred by (1) denying his motion to set aside summary judgment and (2) granting summary judgment in favor of ALS. We address each issue in turn.

### I.　　Motion to Set Aside Summary Judgment.

¶14　　　　Gammage argues that the trial court should have granted his motion for relief under Arizona Rule of Civil Procedure 60(c)(1), which permits a court to relieve a party from a judgment on the basis of "mistake, inadvertence, surprise or excusable neglect." Gammage alleges

---

[1]　　　　Absent material revisions after the relevant date, we cite a statute's current version.

4

in particular that surprise and excusable neglect justified relief from the judgment. We review the superior court's denial of a motion for relief from judgment for an abuse of discretion and will affirm "unless undisputed facts and circumstances require a contrary ruling." *Verma v. Stuhr*, 223 Ariz. 144, 158, ¶ 76, 221 P.3d 23, 37 (App. 2009) (citation omitted).

### A.    Surprise.

**¶15**        Gammage contends he was surprised to find that ALS had filed a motion for summary judgment, because when he located the motion after the court had already entered summary judgment, it was buried under a large stack of discovery/disclosure documents he received from ALS. The superior court found that "the situation presented does not constitute the type of surprise necessary for Rule 60(c) relief." We agree.

**¶16**        At the September 28, 2009 final pretrial conference, the superior court ordered that any dispositive motions be filed on or before October 31, 2012. Thus, Gammage should not have been surprised that the documents sent by ALS on that date included a motion for summary judgment. *See Lopez-Hudson v. Schneider*, 188 Ariz. 407, 410, 937 P.2d 329, 332 (App. 1996) (noting that "a showing of 'exceptional circumstances'" is required for a party to establish "surprise" warranting relief from judgment).

**¶17**        Additionally, contrary to Gammage's assertion that he received the motion for summary judgment along with discovery/disclosures, ALS provided evidence that the motion for summary judgment was sent by overnight delivery separate and apart from ALS's Rule 26.1 disclosure documents, which were sent five days later via compact disc. The only documents Gammage would have received in the summary judgment mailing were the motion and related filings. Had Gammage reviewed the mailing upon receipt, he presumably would have found the motion for summary judgment. Gammage has not established the existence of exceptional circumstances under Rule 60(c)(1), and we conclude that the superior court did not abuse its discretion by rejecting Gammage's assertion that his failure to look through documents delivered to him established "surprise" warranting relief from judgment.

### B.    Excusable Neglect.

**¶18**        Gammage alternatively asserts that his neglect to look through the large stack of documents received from ALS was excusable

because he did not have the time to go through all of them, and he had no reason to believe that the motion for summary judgment would be mixed in with them. The test to determine whether neglect is excusable under Rule 60(c)(1) is whether a reasonably prudent person might have acted in the same manner under the circumstances. *Almarez v. Superior Court*, 146 Ariz. 189, 192, 704 P.2d 830, 833 (App. 1985). In determining whether neglect or mistake is excusable, the court considers whether a party acted diligently. *City of Phoenix v. Geyler*, 144 Ariz. 323, 332, 697 P.2d 1073, 1082 (1985).

¶19 The superior court rejected Gammage's contention, ruling that his "lack of diligence does not constitute 'excusable neglect.'" The court further noted that "a party who represents himself cannot simply toss aside legal documents for review weeks or months in the future. Rather, any reasonable person would have at least taken a few moments to see what documents were included in the mailing before setting the documents aside."

¶20 We agree that Gammage's decision to forego immediate review of the stack of documents received from ALS was not reasonable in light of the fact that he had notice that all dispositive motions were due on or before October 31, 2012. Thus, we affirm the superior court's ruling rejecting Gammage's contention that his failure to timely review documents provided by opposing counsel established excusable neglect.

## II. ALS's Motion for Summary Judgment.

¶21 Gammage argues that the superior court erred by basing its decision to grant summary judgment in favor of ALS on Gammage's failure to respond and the doctrine of res judicata. Gammage also alleges that the court was biased against him and his counsel.

¶22 Summary judgment is appropriate if there "is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). We review de novo the superior court's grant of summary judgment, viewing the facts in the light most favorable to the party against whom judgment was entered. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 193, 195, 805 P.2d 1012, 1014, 1016 (App. 1990). We will affirm summary judgment if the facts produced in support of the claim have so little probative value, given the quantum of evidence required, that no reasonable person could find for its proponent. *Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008. We will affirm a motion for

summary judgment if it is correct on any basis supported by the record, even if not explicitly considered below. *Mutschler v. City of Phoenix*, 212 Ariz. 160, 162, ¶ 8, 129 P.3d 71, 73 (App. 2006).

**¶23** A failure to respond to a motion for summary judgment does not, in and of itself, establish a basis for judgment against the non-moving party if the motion does not demonstrate that the moving party is entitled to the requested relief. *See Zimmerman v. Shakman*, 204 Ariz. 231, 237, ¶ 21, 62 P.3d 976, 982 (App. 2003). But under Rule 56(e)(4), the superior court may "presume that any uncontroverted evidence favorable to the movant, and from which only one inference can be drawn, is true." *Schwab v. Ames Constr.*, 207 Ariz. 56, 60, ¶ 16, 83 P.3d 56, 60 (App. 2004).

**¶24** The court's December 18, 2012 minute entry stated:

> On October 31, 2012, Defendant filed a Motion for Summary Judgment. Plaintiff has not responded to the motion. By failing to do so, Plaintiff has waived any procedural or evidentiary arguments or objections that could have been made in response to the motion. *Johnson by Johnson v. Svidergol,* 157 Ariz. 333, 335 (App. 1988).

> Defendant has established entitlement to judgment as a matter of law. Therefore,

> **IT IS ORDERED** granting the above identified motion.

**¶25** The record does not support Gammage's contention that the court simply granted summary judgment in favor of ALS due to Gammage's non-response or the doctrine of res judicata because of its prior dismissal of a lis pendens action. The minute entry reflects that the court granted summary judgment because ALS's position was meritorious "as a matter of law."

**¶26** Nor does the record support Gammage's assertion that the court was biased toward him and his counsel. Gammage argues that the court's bias is evidenced by the denial of his motion to set aside. But a court's ruling alone does not constitute bias. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 40, 140 P.3d 899, 912 (2006). Although Gammage argued in a motion for change of judge that the court made an "inappropriate, outrageous comment that [his counsel's] disbarment was 'not surprising,'" the minute entry reflects only that the court noted the disbarment was not a surprise because "[a]n Administrative Hearing Officer announced many months ago that this was going to happen."

7

Accordingly, the record does not support Gammage's contention that the court was biased against him or his attorney, or otherwise improperly granted summary judgment in favor of ALS.

> **A.** **Contract Claims: Breach of Contract and Breach of Duty of Good Faith and Fair Dealing.**

**¶27** Gammage alleges that by foreclosing on his loan, ALS breached an agreement to permanently modify his loan and breached its duty of good faith and fair dealing. To prevail on a claim for breach of contract, a plaintiff must prove (1) the existence of a contract, (2) breach of that contract, and (3) damages resulting from the breach of the contract. *Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96, ¶ 16, 302 P.3d 617, 621 (2013). For a contract to be enforceable, there must be a clear offer communicated to the offeree, acceptance of the offer by the offeree, and an exchange of consideration. *Tabler v. Indus. Comm'n*, 202 Ariz. 518, 520, ¶ 8, 47 P.3d 1156, 1158 (App. 2002).

**¶28** A covenant of good faith and fair dealing is implied in every contract under Arizona law. *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 423, ¶ 13, 46 P.3d 431, 434 (App. 2002). A defendant can breach this implied covenant "by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Id.* at 424, ¶ 14, 46 P.3d at 435.

**¶29** Even assuming that an ALS representative told Gammage's counsel that Gammage had been approved for a loan modification, the parties clearly had not yet agreed to loan modification terms, as the only term referenced in counsel's email related to a payment amount. *See Hill-Shafer P'ship v. Chilson Family Trust*, 165 Ariz. 469, 473, 799 P.2d 810, 814 (1990) (stating that parties to a contract "must mutually consent to all material terms" to form a binding contract). Additionally, Gammage testified in his lawsuit against legal counsel that despite counsel's email informing him that ALS had approved him for a loan modification, he and ALS never actually entered into a loan modification agreement. Gammage understood that the loan modification "deal" was not binding until the documentation was reviewed and "everybody signed off," and he admitted that he never received loan modification documentation. Instead, Gammage's counsel received a letter from ALS explicitly informing Gammage that his loan modification request had been denied.

¶30     Because Gammage and ALS never entered into a binding loan modification agreement, the superior court properly granted summary judgment in favor of ALS on Gammage's contract claims.

## B.     Negligence.

¶31     Gammage argues that as a result of negligence, ALS wrongfully foreclosed on his property without warning.  To establish a claim for negligence, a plaintiff must prove four elements: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach proximately caused the plaintiff's injury; and (4) actual damages.  *Gilbert Tuscany Lender, LLC v. Wells Fargo Bank*, 232 Ariz. 598, 601, ¶ 11, 307 P.3d 1025, 1028 (App. 2013).

¶32     An action for negligence cannot be maintained in absence of a duty.  *Republic Nat'l Bank of N.Y. v. Pima County*, 200 Ariz. 199, 202–03, ¶ 12, 25 P.3d 1, 4–5 (App. 2001).  The existence of a duty is a question of law. *Ferguson v. Cash, Sullivan & Cross Ins. Agency, Inc.*, 171 Ariz. 381, 384, 831 P.2d 380, 383 (App. 1991).  Although duties of care may arise from a special relationship based on a contract or a defendant's conduct, such a relationship is not essential to find the existence of a duty of care.  *Gipson v. Kasey*, 214 Ariz. 141, 145, ¶ 18, 150 P.3d 228, 232 (2007).

¶33     ALS, in servicing Gammage's loan, did not have a duty to protect Gammage from foreclosure after Gammage (1) decided to stop making payments on his loan, (2) remained in default by not fulfilling the terms of the temporary Workout Agreement, and (3) failed to come to terms with ALS on a loan modification.  *See Republic Nat'l Bank*, 200 Ariz. at 202–03, ¶ 12, 25 P.3d at 4–5 (stating that a negligence action requires a duty that a defendant "conform to a particular standard of conduct in order to protect [plaintiff] against unreasonable risks of harm").  Accordingly, we conclude that the superior court did not err by granting summary judgment in favor of ALS on Gammage's negligence claim.

## C.     Negligent Supervision.

¶34     Gammage argues that "[n]otes from [ALS] show inconsistent activity by employees, directives by employees of [ALS] to other agents and without notice of retracting the agreement and redirecting the home to foreclosure, no notification of the pending foreclosure."  To establish a claim for negligent supervision, the plaintiff must first prove that an employee of the defendant committed a tort.  *Kuehn v. Stanley*, 208 Ariz. 124, 130, ¶ 21, 91 P.3d 346, 352 (App. 2004).  If the theory of the underlying tort fails, the defendant employer is not liable for negligent supervision.

*Id.* The plaintiff must further prove that the defendant "had a reason and an opportunity to act, [] failed to adequately discharge [its] duty to supervise, and [] thereby contributed to the cause of the [injury]." *Boomer v. Frank*, 196 Ariz. 55, 60, ¶ 21, 993 P.2d 456, 461 (App. 1999).

**¶35**      A review of ALS's internal "Consolidated Notes Log" does not support Gammage's assertion that ALS's employees committed tort(s) against him. At most, the log reflects ALS's efforts as a loan servicer to determine what to do with a loan that was in default. Even assuming that an ALS employee incorrectly informed Gammage's counsel that the loan modification request had been approved, Gammage has not established negligent supervision or that the employee's act was anything more than a mere mistake. More importantly, there is no evidence that improper supervision by ALS of any of its employees caused harm to Gammage. *See id.*

**¶36**      Gammage's legal counsel only sent one letter to ALS to try to find out why the August 5 letter contradicted what counsel believed to be an approval of Gammage's loan modification request, and Gammage notes that his counsel failed to notify him that there was a problem with his loan modification request. But that failure does not make ALS liable for negligent supervision of its employees. Accordingly, we conclude that the superior court did not err by granting summary judgment on Gammage's negligent supervision claim.

### D.      Intentional Infliction of Emotional Distress.

**¶37**      Gammage did not argue in his opening brief his claim for intentional infliction of emotional distress ("IIED"). While he discussed this claim in his reply brief, an issue raised for the first time in a reply brief is waived. *See Ness v. W. Sec. Life Ins. Co.*, 174 Ariz. 497, 502, 851 P.2d 122, 127 (App. 1992); ARCAP 13(a)(6) (stating that appellant's opening brief must set forth "[a]n argument which shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on").

**¶38**      Furthermore, the claim is meritless. To establish a claim for IIED, a plaintiff must produce evidence to show that (1) the defendant engaged in "extreme and outrageous" conduct, (2) the defendant "intend[ed] to cause emotional distress or recklessly disregard[ed] the near certainty that distress will result from his conduct," and (3) the plaintiff suffered severe emotional distress as a result of defendant's

conduct. *Lucchesi v. Stimmell*, 149 Ariz. 76, 78–79, 716 P.2d 1013, 1015–16 (1986) (citation omitted). For a defendant's conduct to be considered "extreme and outrageous" it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (citation omitted).

**¶39**         Although Gammage asserts that ALS engaged in "extreme" and "outrageous" conduct by foreclosing on his house notwithstanding a temporary workout agreement, the evidence does not support such an assertion. Gammage decided to default on his loan payments in order to persuade ALS to enter into a loan modification agreement. But Gammage was unsuccessful in entering into an agreement to modify the terms of his loan. Because Gammage remained in default and failed to cure the arrearage, ALS exercised its right to foreclose on Gammage's home. Concluding that ALS's actions do not rise to the level of being "beyond all possible bounds of decency" and are in fact normal business practice when a loan remains in default, the superior court properly granted summary judgment in favor of ALS on Gammage's IIED claim. *See Patton v. First Fed. Sav. & Loan Ass'n of Phx.*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) (affirming the grant of summary judgment on an IIED claim in favor of a lender because the lender's actions, although harsh and upsetting to the borrower, were "within the realm of acceptable business practice" and did not rise to the level of extreme and outrageous conduct necessary for IIED).

### E.    Negligent Infliction of Emotional Distress.

**¶40**         Gammage did not raise this claim in his opening brief. Accordingly, he has waived consideration of this issue on appeal. *See Dawson v. Withycombe*, 216 Ariz. 84, 100 n.11, ¶ 40, 163 P.3d 1034, 1050 n.11 (App. 2007).

**¶41**         The claim is meritless in any event. To maintain a cause of action for negligent infliction of emotional distress, a plaintiff must "(1) witness an injury to a closely related person, (2) suffer mental anguish manifested as physical injury, and (3) be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant." *Pierce v. Casas Adobes Baptist Church*, 162 Ariz. 269, 272, 782 P.2d 1162, 1165 (1989). Gammage has not established any of the elements of this type of claim.

## CONCLUSION

**¶42** For the foregoing reasons, we affirm the superior court's entry of judgment in favor of ALS.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : gsh