NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

MICHAEL RZENDZIAN; PAMELA RZENDZIAN and RICHARD
RZENDZIAN, husband and wife, *Plaintiffs/Appellants*,

*v.*

MARSHALL & ILSLEY BANK dba M&I BANK, a Wisconsin banking
corporation, *Defendant/Appellee*.

No. 1 CA-CV 13-0058
FILED 07-17-2014

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2011-091648
The Honorable Mark F. Aceto, Judge

**AFFIRMED**

———————————————

Hadous Co PLLC, Mesa
By Nemer N. Hadous
 and
Price Law Group APC, Tempe
By David A. Chami
*Co-Counsel for Plaintiffs/Appellants*

Greenberg Traurig LLP, Phoenix
By Brian J. Schulman, Nedda R. Gales
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge Kent C. Cattani joined.

---

**G E M M I L L,** Judge:

¶1        Michael, Pamela, and Richard Rzendzian appeal from the grant of summary judgment on their claims against Marshall & Ilsely Bank ("M&I"). We affirm.

## BACKGROUND

¶2        Pamela and Richard Rzendzian entered into an asset purchase agreement ("Agreement") in September of 2004 to purchase property that contained a gas station and convenience store for $2,000,000. Subsequently, Terra Properties RPM, LLC ("Terra"), managed by Michael Rzendzian, was nominated as the buyer under the Agreement. The $2,000,000 purchase price was satisfied, in part, by a $1,000,000 loan from M&I to Terra, which executed a note to repay the loan (the "Terra Note"). Two personal guaranties ("Guaranties") securing the payment of the Terra Note were executed, one by Pamela and Richard Rzendzian and one by Michael Rzendzian.

¶3        Approximately two months after Terra's inspection period ended, M&I retained Thoms & Associates Appraisal & Consulting, LLC ("Thoms") to prepare an appraisal on the property. M&I provided Thoms with an "internal bank write-up" that both informed Thoms of the property's $2,000,000 purchase price and noted that the property was expected to appraise at $2,000,000. Additionally, the write-up stated that the Seller purchased the gas station from Giant Industries in October of 2003 as part of a deal that sold three separate stations and that the Seller owned fourteen gas stations in the Phoenix metropolitan area. It was later discovered that, six months earlier, another appraisal was prepared by a different appraiser for a different bank ("Sell Appraisal") that had valued the property at $700,000. Thoms discovered in the course of its appraisal that the Seller had purchased the property in July 2004 for $675,000. Nothing in the record, however, demonstrates that M&I knew of the Sell Appraisal at the time it hired Thoms or that Thoms knew of it when conducting its appraisal.

¶4          Thoms appraised the property at $2,010,000.   At closing, M&I told the Rzendzians that the property appraised at $2,010,000, but the Rzendzians were not provided with a copy of the appraisal or informed of the earlier Sell Appraisal.   The Rzendzians never obtained their own appraisal.  The Thoms Appraisal expressly provided that it was prepared for M&I, the Southwest Business Administration, and the Small Business Administration, that they were the intended users, and that the intended use was for loan underwriting purposes.  Ultimately, Terra defaulted on the Terra Note in 2010.

¶5          After Terra defaulted, the Rzendzians sued M&I, seeking damages for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.   The trial court granted summary judgment for M&I on each claim and awarded attorneys' fees. The Rzendizians timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## ANALYSIS

¶6          Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1).  We view the facts and the inferences arising from those facts in the light most favorable to the Rzendzians as the nonmoving party.  *Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 506, ¶ 10, 269 P.3d 678, 682 (App. 2011).   "We determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law."  *Id.*

I.          **The Guaranties and the Implied Covenant of Good Faith and Fair Dealing**

¶7          The Rzendzians argue that the trial court erred in granting summary judgment on their claim that M&I breached the covenant of good faith and fair dealing implied in the Guaranties by causing them to rely on factual and legal inaccuracies.  Specifically, the Rzendzians argue that the trial court improperly considered the absence of an express contractual duty in the Guaranties to disclose the Thoms Appraisal as dispositive of whether M&I owed a duty under the implied covenant.  To prevail on a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must demonstrate that:  (1) the defendant exercised express discretion in a way that was inconsistent with the plaintiff's reasonable expectations regarding the contract or (2) the defendant acted

in a manner not expressly excluded by the contract's terms but that nevertheless adversely impacted the plaintiff's reasonably expected benefits of the bargain. *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424, ¶ 14, 46 P.3d 431, 435 (App. 2002).

¶8 In granting summary judgment, the trial court held that the implied covenant of good faith and fair dealing only impacted the Rzendzians' expected benefit for the Guaranties—specifically, that the loan from M&I to Terra would be made. The trial court found that because lenders often obtain pre-loan appraisals for their own benefit, which are not required to be shared with borrowers or guarantors, the Rzendzians did not have a reasonable expectation that any such appraisals would be disclosed. Accordingly, the trial court held that M&I did not breach any implied covenant of good faith and fair dealing by failing to disclose it.

¶9 The Rzendzians contend that the trial court was required to look beyond the express conditions of the Guaranties and consider whether M&I's failure to disclose the Thoms Appraisal was intended to mislead them into signing the Guaranties. We conclude otherwise, however, because the duty of good faith, even if it "extends beyond the written words of the contract," remains limited to the scope of the contract between the parties when the damages claimed are based on a breach of contract. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters, and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490-91, ¶¶ 59-63, 38 P.3d 12, 28-29 (2003) (noting that "implied terms" can exist in a contract to establish a covenant of good faith and fair dealing, but claims for contract damages are governed by whether an agreement between parties established a duty that was breached). Furthermore, this court has previously noted that a breach of the implied covenant of good faith and fair dealing cannot contradict an express contractual term. *Bike Fashion Corp.*, 202 Ariz. at 423, ¶14, 46 P.3d at 435. Because the Rzendzians were not parties to the Agreement or the Terra Note, we only look to the Guaranties to determine whether any duty arose.

¶10 The Guaranties provide that they exist to "induce" M&I "to extend credit or to grant or continue other credit accommodations" to Terra. No amount of credit is mentioned in the Guaranties. The Guaranties likewise state:

> **REPRESENTATIONS:** The undersigned [guarantor] acknowledges and agrees that Lender (a) has not made any

representations or warranties with respect to, (b) does not assume any responsibility to the undersigned for, and (c) has no duty to provide information to the undersigned regarding, the enforceability of any of the Obligations or the financial condition of any Debtor or guarantor. **The [guarantor] has independently determined the creditworthiness of Debtor [Terra] and the enforceability of the Obligations [under the Terra Note] and until the Obligations are paid in full will independently and without reliance on Lender continue to make such determinations.**

(Bold original).

¶11        The Rzendzians assert that had they known about the Thoms Appraisal or the information that suggested the property was only worth $700,000, they would not have signed the Guaranties. This argument fails to establish a breach of the implied covenant of good faith and fair dealing, however, because the Guaranties cannot be read to establish a reasonable expectation that M&I would disclose any appraisal, and neither did M&I's non-disclosure of the Thoms Appraisal adversely impact the Rzendzians' "reasonably expected benefits of the bargain." *See Bike Fashion Corp.*, 202 Ariz. at 424, ¶ 14, 46 P.3d at 435. As the trial court noted, the Rzendzians benefit in executing the Guaranties was to induce M&I into providing a loan for Terra, which occurred. Even if the Guaranties were read in conjunction with the obligations imposed by the Terra Note, the Rzendzians' argument would necessarily mean that they relied on information provided by M&I on the enforceability of the obligations under the Terra Note, despite agreeing to an independent duty to determine whether the obligations being imposed by M&I on Terra were achieving the benefit of that separate bargain. The Rzendzians' reliance on M&I cannot give rise to a duty on M&I based on an implied covenant when the express terms of the Guaranties imposes a responsibility on the Rzendzians to independently determine whether Terra was achieving the expected benefit of its bargain under the Terra Note. Accordingly, we conclude that the trial court did not err in granting summary judgment.

## II.    Unjust Enrichment

¶12        The Rzendzians argue that their unjust enrichment claim arises out of the alleged bad faith action of M&I in concealing the Thoms Appraisal. In addition to arguing the merits of that claim, M&I argued

below and on appeal that the claim was barred by the statute of limitations. The trial court granted M&I summary judgment on the merits of the Rzendzians' unjust enrichment claim without reaching the statute of limitations issue. Although the trial court adjudicated this claim on the merits, we resolve the issue on appeal by application of the applicable statute of limitations. We may affirm if the trial court's judgment is correct for any reason. *City of Phoenix v. Geyler*, 144 Ariz. 323, 330, 697 P.2d 1073, 1080 (1985).

¶13        The statute of limitations on a claim for unjust enrichment is four years, as established by A.R.S. § 12-550. *See San Manuel Copper Corp. v. Redmond*, 8 Ariz. App. 214, 218, 445 P.2d 162, 166 (App. 1968) (stating "we would have no difficulty in finding that a suit for unjust enrichment . . . is controlled by A.R.S. § 12-550"). Michael and Pamela Rzendzian both testified that they first became familiar with the Thoms appraisal in mid-2006. Because the Rzendzians' unjust enrichment claim arises out of their lack of knowledge about the Thoms appraisal, their discovery of the Thoms appraisal's existence began the four year statute of limitations period, which expired in mid-2010. Because the Rzendzians did not file their lawsuit until February of 2011, their unjust enrichment claim is untimely. The trial court did not err in granting summary judgment on the unjust enrichment claim.

## III.    Trial Court's Application of Rule 17(a)

¶14        The Rzendzians challenge the trial court's denial of their motion under Arizona Rule of Civil Procedure 17(a) to join or substitute Terra as the plaintiff. The meaning and effect of a procedural rule is a question of law that we review de novo. *Preston v. Kindred Hospitals W., L.L.C.*, 225 Ariz. 223, 225, ¶ 8, 236 P.3d 450, 452 (App. 2010) *aff'd*, 226 Ariz. 391, 249 P.3d 771 (2011).

¶15        In granting summary judgment, the trial court additionally ruled that the Rzendzians were not parties to the Terra Note and had "no standing to sue based on that contract." The trial court, with a different judge presiding, in June 2011 had previously denied M&I's Rule 12 motion that alleged the Rzendzians lacked standing. Twenty-four days after summary judgment was granted in September 2012, the Rzendzians filed a motion under Rule 17(a) to substitute Terra Properties as plaintiffs for the claims on the Terra Note. This motion was denied by the trial court without comment.

¶16         In relevant part, Rule 17(a) provides:

> No action shall be dismissed on the ground that it is not
> prosecuted in the name of the real party in interest until a
> reasonable time has been allowed after objection for
> ratification of commencement of the action by, or joinder or
> substitution of, the real party in interest.

Our supreme court has endorsed an application of Rule 17(a) that
recognizes the discretion of trial courts, under Rule 15(a), to deny leave to
amend when "there has been undue delay, dilatory action, or undue
prejudice." *See Preston*, 226 Ariz. at 394, ¶ 13, 249 P.3d at 774 (quoting
*Owen v. Superior Court (Donald)*, 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982)).
Here, the Rzendzians allege prejudice only to the extent that "equity
commands they be afforded reasonable opportunity to join/substitute
Terra Properties."

¶17         This court has previously recognized that Rule 17(a) exists
"to enable the defendant to avail himself of the evidence and defenses that
he has against the real party in interest and to assume the finality of the
results in the application of res judicata." *Cruz v. Lusk Collection Agency*,
119 Ariz. 356, 358, 580 P.2d 1210, 1212 (App. 1978). On this record, we
find nothing to suggest that the trial court did not adequately follow Rule
17(a) in denying the Rzendzians' motion. Indeed, the Rzendzians should
have realized when M&I first raised the standing question in April of 2011
that Terra Properties may have been an appropriate plaintiff or a real
party in interest that needed to be joined in their action. Under Rule 15(a)
the Rzendzians could have sought leave to join Terra at any point between
April 2011 and September 2012.

¶18         With this in mind, we note that the rule places the burden on
the plaintiff to ensure that a real party in interest is properly joined. The
Rzendzians' argument that they relied on the trial court's previous denial
of M&I's Rule 12 motion in assuming the question of standing resolved is
to no avail because the court's denial of the Rule 12 motion did not create
a different contractual relationship between the Rzendzians and M&I
beyond what was defined by the terms of the Guaranties. Accordingly,
the trial court, in reviewing the substantive evidence on summary
judgment, properly determined that the contracts at issue did not
establish standing for the Rzendzians as alleged. *See generally Orme Sch. v.
Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). With over a year
between M&I's first argument that suggested the Rzendzians were not

real parties in interest and M&I's motion for summary judgment raising the same question, the Rzendzians had "a reasonable time" to seek to include Terra as a plaintiff. After the court had granted summary judgment to M&I, the Rzendzians were not entitled to use Rule 17(a) to breathe new life into their claims. At that point in time, M&I would have been prejudiced if the Rzendzians were allowed to add a new party because the claims against M&I had been resolved and M&I would be subjected to new litigation based on a contractual relationship that was not alleged in the instant action. Moreover, even if the Rzendzians had filed a Rule 15(a) motion instead of a Rule 17(a) motion, the trial court was properly within its discretion to deny it. We conclude therefore that the trial court did not err or misapply Rule 17(a) in denying the Rzendzians' motion.

## IV. Attorneys' Fees Award

¶19 The Rzendzians argue that the trial court abused its discretion in awarding attorneys' fees to M&I because the trial court erred in determining that they had not demonstrated extreme hardship. "Extreme hardship" is a factor that may assist a trial court in determining the appropriateness of attorneys' fees. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). To raise the issue of extreme hardship, the party asserting it must "present specific facts by affidavit or testimony." *Woerth v. City of Flagstaff*, 167 Ariz. 412, 420, 808 P.2d 297, 305 (App. 1990). We apply an abuse of discretion standard when reviewing a trial court's decision to award attorneys' fees in the face of a plea of hardship. *See Scottsdale Memorial Health Systems, Inc. v. Clark*, 164 Ariz. 211, 217, 791 P.2d 1094, 1100 (App. 1990) (reviewing a determination of extreme hardship for an abuse of discretion). Evidence of hardship, however, only obligates the court to consider it as a factor in determining an attorneys' fees award. *See Rowland v. Great States Ins. Co.*, 199 Ariz. 577, 587 n.7, ¶ 32, 20 P.3d 1158, 1168 n.7 (App. 2001) (observing that a trial court could not consider hardship as a factor for determining attorneys' fees because the party asserting hardship provided no evidence of it).

¶20 Here, the Rzendzians raised the issue of extreme hardship by presenting sworn declarations, several documents related to an individual retirement account in Richard Rzendzian's name with funds of approximately $420,000, a letter from the Department of the Treasury stating that Michael Rzendzian owed over $600,000 to the Small Business Administration, and a Federal Reserve Bank of Chicago document entitled "Modern Money Mechanics: A Workbook on Bank Reserves and Deposit

Expansion." In awarding attorneys' fees, the trial court stated that it had considered the applicable law, "including the factors set out in *Associated Indem. Corp. v. Warner*." The trial court specifically concluded that the evidence provided by the Rzendzians did not show that an attorneys' fees award would cause extreme hardship. Because the trial court noted that it considered the applicable law and made its determination accordingly, we conclude on this record that the trial court did not abuse its discretion. *Cf. Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 284, 947 P.2d 846, 858 (App. 1997) (reversing an award of attorneys' fees because the trial court based its ruling on unsupported factual claims).

## CONCLUSION

¶21 In our discretion, we deny M&I's request for attorneys' fees on appeal, but we will award taxable costs to M&I as the prevailing party upon its compliance with ARCAP 21. We affirm the judgment entered in favor of M&I against the Rzendzians.



Ruth A. Willingham · Clerk of the Court
FILED: gsh