IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| ERNEST W. KUEHN and JO ANN C. KUEHN, | ) ) ) | 2 CA-CV 2003-0136 DEPARTMENT A |
| Plaintiffs/Appellants, | ) ) | O P I N I O N |
| v. | ) ) | |
| THERESA C. STANLEY and JOHN DOE STANLEY, FIRST MAGNUS FINANCIAL CORPORATION, and CHARTER FUNDING, | ) ) ) ) ) | |
| Defendants/Appellees. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20020978

Honorable Ted B. Borek, Judge

AFFIRMED

---

Albert H. Hartwell, Jr.                                              Tucson
                                    Attorney for Plaintiffs/Appellants

Munger Chadwick, P.L.C.
  By John F. Munger and Laura P. Chiasson                            Tucson
                                    Attorneys for Defendants/Appellees

---

H O W A R D, Judge.

¶1 Appellants Ernest and Jo Ann Kuehn appeal the trial court's grant of summary judgment and award of attorney fees in favor of appellees Theresa Stanley and First Magnus Corporation on the Kuehns' claims of negligence, consumer fraud, negligent supervision, and breach of contract. The Kuehns contend that issues of law and material fact exist precluding summary judgment and that the trial court abused its discretion when it granted attorney fees to First Magnus as a prevailing party to a contract claim. Finding no error or abuse of discretion, we affirm.

¶2 Although the dispositive facts are not in dispute here, we view the facts in the light most favorable to the party opposing summary judgment. *Link v. Pima County*, 193 Ariz. 336, ¶12, 972 P.2d 669, ¶12 (App. 1998). In July 2000, the Kuehns entered into a contract to purchase real property. The contract specified a purchase price of $282,000; the Kuehns offered $3,000 of this amount in earnest money and agreed to pay approximately $57,000 at the close of escrow. The contract was contingent on the Kuehns qualifying for sufficient financing for the remainder of the purchase price.

¶3 The Kuehns subsequently applied for a mortgage loan in the amount of $220,000 from Charter Funding Corporation, a division of First Magnus. As part of its loan-approval process, First Magnus asked Theresa Stanley to appraise the property. Stanley was employed by CRG Valuations, another division of First Magnus. After Stanley appraised the property at $282,000, First Magnus lent the Kuehns $220,000. Before the close of escrow, First Magnus provided a copy of the appraisal report to the Kuehns. After

they purchased the property, the Kuehns showed the appraisal report to a family member who was also a licensed appraiser. This family member analyzed the report and concluded that Stanley had "deviated severely" from standard appraisal practices. The Kuehns then had another appraisal performed, which resulted in a value of $245,000, a difference of $37,000 from Stanley's appraisal.

¶4 The Kuehns sued Stanley and First Magnus, alleging claims of negligence, gross negligence, negligent supervision, fraud, consumer fraud, and breach of contract.[1] First Magnus moved for partial summary judgment on all claims of negligence or fraud, which the trial court granted. First Magnus then filed a second motion for summary judgment, seeking dismissal of the remaining breach of contract claim. The trial court also granted this motion and awarded First Magnus its attorney fees. The Kuehns now appeal to this court.

## TORT CLAIMS

¶5 The Kuehns argue that the court erred when it granted summary judgment on the tort claims in favor of First Magnus. We review a grant of summary judgment de novo. *Strojnik v. Gen. Ins. Co. of Am.*, 201 Ariz. 430, ¶10, 36 P.3d 1200, ¶10 (App. 2001).

¶6 In its first motion for partial summary judgment, First Magnus sought dismissal of the Kuehns' negligence-related claims, arguing it had not owed the Kuehns any

---

[1] In their opening brief, the Kuehns concede that they did not present evidence as to the gross negligence and fraud claims to the trial court. Accordingly, these issues are waived. *See Cimarron Foothills Cmty. Ass'n v. Kippen*, 206 Ariz. 455, ¶9, 79 P.3d 1214, ¶9 (App. 2003).

duty.  First Magnus also asked the court to dismiss the fraud claims on the ground the Kuehns had had no right to rely, and had not relied, on the appraisal.  The Kuehns responded, first arguing that the parties had been in privity of contract.  The Kuehns then noted that "the issue here is not privity, but reliance," arguing that they had had a right to rely on the allegedly negligent appraisal.  In support of this argument, the Kuehns quoted extensively from Restatement (Second) of Torts § 552 (1977), which states the law on negligent misrepresentation.

¶7        After oral argument, the trial court requested supplemental briefing addressing *Hoffman v. Greenberg*, 159 Ariz. 377, 767 P.2d 725 (App. 1988), a case that analyzed a claim for damages resulting from a negligent appraisal under the law of negligent misrepresentation as stated in Restatement § 552.  After reviewing these arguments, the court granted First Magnus's motion for summary judgment on the basis that the Kuehns had had no right to rely on the appraisal under *Hoffman*.  The court further concluded the Kuehns had made no showing of reliance since they had been shown the appraisal only after they were already bound contractually to purchase the property.

A.  **Negligence/negligent misrepresentation**

¶8        The Kuehns argue that the trial court erred in granting summary judgment on negligence by addressing the tort of negligent misrepresentation instead of simple negligence.  The Kuehns contend the "court appear[ed] to have confused the requirements"

4

of both negligence and negligent misrepresentation and, thus, misapplied the Arizona authorities on which it relied.[2]

**¶9**      When considering the duty of care in a negligence claim resulting from failure to exercise reasonable care in supplying professional information, Arizona courts follow the law of negligent misrepresentation set forth in Restatement § 552(1), which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*See Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 188-89, 677 P.2d 1292, 1296-97 (1984); *see also Hoffman*, 159 Ariz. at 379-80, 767 P.2d at 727-28 (applying § 552 to a claim of damage from a negligent real estate appraisal).  Under the Restatement, the liability resulting from a claim for negligent misrepresentation is limited to losses suffered:

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

---

[2]In its answering brief, First Magnus argues that the Kuehns waived any objection to summary judgment on the issue of negligence because they did not contradict its argument that it had no duty in their response to First Magnus's motion for partial summary judgment. But in its reply to the partial summary judgment motion, First Magnus stated the exact opposite when it noted, "[i]n their Response to Defendants' Motion for Summary Judgment, [the Kuehns] attempt to argue that First Magnus owed a duty to them to conduct an appraisal for their benefit."  Accordingly, we consider the negligence issue on its merits.

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement § 552(2). Comment h to § 552 further notes that a claim would succeed so long as

> the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it.

The drafters of the Restatement justified this limited liability for negligent misrepresentation claims "because of the extent to which misinformation may be, and may be expected to be, circulated, and the magnitude of the losses which may follow from reliance upon it." Restatement § 552 cmt. a.

¶10 Based on this rationale, the court in *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 30, 945 P.2d 317, 341 (App. 1996), held that the gravamen of a claim of negligence against a provider of professional information is negligent misrepresentation and that a party may not pursue a claim for negligence separate and distinct from a negligent misrepresentation claim. The court noted that the drafters of the Restatement did not narrow the range of liability for negligent misrepresentation "in the expectation that a plaintiff could escape such limitations merely by attacking the same conduct in an ordinary negligence count." *Id.* at 31, 945 P.2d at 342. Thus, the court said, to allow a plaintiff to pursue a negligence claim separate and distinct from negligent

6

misrepresentation would "sanction an end-run around Restatement (Second) § 552." *Id*. at 30, 945 P.2d at 341. Based on the rule articulated in *Standard Chartered*, the trial court properly concluded that the duty in this situation is limited by Restatement § 552 and did not err when it analyzed the Kuehns' negligence claim as one of negligent misrepresentation.

¶11 The Kuehns, however, note that the supreme court in *Donnelly* allowed claims of negligence and negligent misrepresentation to proceed. But the allegedly negligent party in *Donnelly* was an architect—a design professional—and not an appraiser or auditor as were the defendants in *Hoffman* or *Standard Chartered*. Furthermore, the primary issue in *Donnelly* was whether a design professional's tort duty was limited by privity of contract, not whether any distinction existed between negligence and professional negligent misrepresentation. *Donnelly*, 139 Ariz. at 187, 677 P.2d at 1295; *see also Standard Chartered*, 190 Ariz. at 30, n.10, 945 P.2d at 341, n.10. Thus, *Donnelly* is not helpful to the Kuehns on this issue.

¶12 The Kuehns further contend that, even under a negligent misrepresentation analysis, the trial court erred in granting summary judgment in favor of First Magnus because they submitted adequate proof to raise an issue of fact about their reliance and right to rely. Because a plaintiff must show "justifiable reliance" to prevail on a claim for negligent misrepresentation, *see* Restatement § 552(1), we first determine whether the trial court erred in finding the Kuehns had no right to rely on Stanley's appraisal.

¶13    After the Kuehns executed the purchase contract and submitted their loan application, First Magnus directed Stanley to appraise the property. Based in part on Stanley's appraisal, First Magnus approved the loan to the Kuehns. But the Kuehns did not hire Stanley to conduct an appraisal on their intended purchase. In fact, Stanley stated in her affidavit that she had had no contact with the Kuehns either before or during the appraisal process. And the Kuehns were already contractually bound to purchase the property, contingent upon qualifying for funding, before they received the appraisal. Furthermore, the loan application specifically stated that First Magnus made no representation about the value of the property; the summary appraisal report also noted that the appraisal was "intended for use by [First Magnus] for a mortgage finance transaction only." Under these circumstances, the trial court properly found that the Kuehns had failed to raise an issue of fact on whether they could prove justifiable reliance on the appraisal.

¶14    Furthermore, the Kuehns failed to show that Stanley had owed them any duty under Restatement § 552. *See Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, ¶25, 10 P.3d 1181, ¶25 (App. 2000) (we may affirm judgment if it is correct for any reason). Stanley performed a "short form" appraisal, which is a quick estimate for lending purposes. In contrast, an appraisal by a purchasing party would likely be more encompassing and in-depth than an ad-hoc assessment of value. *Cf. Bus. Realty of Ariz., Inc. v. Maricopa County*, 181 Ariz. 551, 557, 892 P.2d 1340, 1346 (1995) ("The appraisal of real estate is an art, not a science. . . . Although the use of such guidelines may be mandatory in

8

appraisal work, their application to various situations calls upon the exercise of judgment."). Because First Magnus's use of the appraisal to decide funding is not related to the Kuehns' use of the appraisal, Stanley did not provide the appraisal "for the guidance of" the Kuehns as the Restatement requires. Restatement § 552(1).

¶15 Although it is foreseeable that other interested parties, such as the Kuehns, would gain access to the appraisal and, perhaps, even rely on the information in it, these other parties are not "one of a limited group of persons" protected under the Restatement. Restatement § 552(2)(a). Instead, the Kuehns belong to "the much larger class [of persons] who might reasonably be expected sooner or later to have access to the information and foreseeably" rely on it. Restatement § 552 cmt. h; *see also Hoffman*, 159 Ariz. at 379-80, 767 P.2d at 727-28. Because Stanley did not owe the Kuehns any duty, summary judgment was appropriate.

## B. Consumer fraud

¶16 The Kuehns next argue that the trial court erred when it summarily dismissed their claim under Arizona's consumer fraud statute, A.R.S. § 44-1522. That statute provides:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged

9

thereby, is declared to be an unlawful practice.

§ 44-1522(A). To succeed on a claim of consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise.[3] *Correa v. Pecos Valley Dev. Corp.*, 126 Ariz. 601, 605, 617 P.2d 767, 771 (App. 1980). An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information. *Id.*

¶17        The Kuehns first argue that the trial court did not consider their consumer fraud claim when it granted summary judgment in favor of First Magnus. But the Kuehns failed to differentiate between the fraud claims in their response, so the trial court addressed the issues presented. And the court expressly found that "there [wa]s no showing of reliance" on the appraisal by the Kuehns. Because reliance is a required element under Arizona's consumer fraud statute, *see* § 44-1522(A), the trial court implicitly rejected the consumer fraud claim also.

¶18        The Kuehns next argue that the trial court erred in finding that they had not relied on the appraisal. In their opening brief, they contend that, had they known the true value of the property, they might have pursued other options such as, breaching the contract, renegotiating the contract, or invoking the mortgage contingency clause of the contract. But

---

[3]Section 44-1521, A.R.S., defines "merchandise" as "objects, wares, goods, commodities, intangibles, real estate, or services."

First Magnus argues in their answering brief that the Kuehns waived the "other options" argument by not raising it before the trial court. The Kuehns then countered the waiver issue in their reply brief, contending that the "other options" were discussed in their response to the Kuehns' second motion for summary judgment. And, at oral argument, the Kuehns further noted that the mortgage contingency clause had been expressly discussed in both the supplemental memorandum concerning *Hoffman* and the oral argument concerning the first motion for summary judgment.

¶19        In their response to First Magnus's second motion for summary judgment, the Kuehns referred to these other options only to show that they suffered damage from a breach of contract. And the court had already granted summary judgment on the tort claims. Additionally, in the supplemental memorandum, the Kuehns merely stated that the mortgage contingency clause distinguished this case from *Hoffman*; the Kuehns did not discuss whether any options were available to them or if these options had caused them to rely on the appraisal. Although the Kuehns did mention the mortgage contingency clause in the context of reliance at the oral argument, it was to support the idea that a lender would not have completed the deal if the appraisal showed a lesser value. Thus, in all three of these instances, the Kuehns did not contend that, in the context of the tort claims, they had shown reliance on the appraisal because they would have had other options prior to closing on the property. Furthermore, the Kuehns did not dispute First Magnus's claim that it would have granted the loan and, thus, satisfied the mortgage contingency clause even if the appraisal

11

had shown the lower amount. Accordingly, because the Kuehns did not raise the "other options" issue to the trial court, it is waived. *See Schoenfelder v. Ariz. Bank*, 165 Ariz. 79, 90, 796 P.2d 881, 892 (1990) (on appeal from summary judgment, we will not consider new factual theories raised in attempt to secure reversal of trial court's determinations of law).

¶20      After reviewing the record, we agree with the trial court that the Kuehns failed to raise a fact issue on whether they had relied on the appraisal. The Kuehns received the appraisal report only after they were already contractually bound to purchase the real estate. Although Jo Ann Kuehn stated in her affidavit that she had relied on the appraisal report "as an accurate indicator of value" as well as "a reassurance" that she and her husband were paying a fair market price, it is unclear how these belated "reassurances" translate into evidence of detrimental reliance. And because they have waived the "other options" argument, the Kuehns have failed to present any evidence that they relied on the appraisal report in entering into or performing the contract. The trial court therefore did not err when it granted summary judgment on their claim under Arizona's consumer fraud statute.

## C. Negligent supervision

¶21      The Kuehns additionally argue that First Magnus was negligent in supervising Stanley and, thus, that the trial court erred in dismissing their claim of negligent supervision. For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort. *Mulhern v. City of*

*Scottsdale*, 165 Ariz. 395, 398, 799 P.2d 15, 18 (App. 1990). If the theory of the employee's underlying tort fails, an employer cannot be negligent as a matter of law for hiring or retaining the employee. *See id.*

¶22 In this case, the Kuehns waived the issues of gross negligence and common law fraud by not raising them in the trial court. And we have already affirmed the trial court's grant of summary judgment on their claims of negligence, negligent misrepresentation, and consumer fraud. Because the Kuehns have not shown that Stanley committed any tortious act against them, their claim of negligent supervision against First Magnus also fails. Accordingly, the trial court did not err in granting summary judgment on the claim of negligent supervision.

## BREACH OF CONTRACT CLAIM

¶23 The Kuehns next argue that the trial court erred in granting First Magnus's second motion for summary judgment on their claim for breach of contract. The Kuehns entered into the contract for the sale of real property in July 2000. The following month, they submitted to First Magnus a "Uniform Residential Loan Application," asking First Magnus to finance their purchase in the amount of $220,000. As part of this agreement, the Kuehns acknowledged and agreed to nine specific provisions, including a disclaimer that First Magnus "ma[d]e no representations or warranties, express or implied, to the [Kuehns] regarding . . . the value of the property." First Magnus had Stanley appraise the property;

First Magnus then provided the Kuehns a copy of the appraisal report before the close of escrow.

¶24 The Kuehns argue that, because the purchase contract called for an appraisal to obtain the loan, First Magnus was obligated to provide an accurate appraisal pursuant to the purchase contract. In essence, the Kuehns seem to argue that the appraisal requirement in the purchase contract obligated First Magnus to provide an appraisal and that, based on this obligation and the fact that First Magnus did provide them a copy of the appraisal report, the Kuehns had an expectation under the purchase contract that the appraisal was fair and accurate.

¶25 But First Magnus was not a party to the purchase contract; it was only between the Kuehns and the seller of the real property. The only contract between First Magnus and the Kuehns was the loan agreement in which First Magnus agreed to lend the Kuehns $220,000. Because privity of contract must exist before a party may seek to enforce a contract, *Stratton v. Inspiration Consolidated Copper Co.*, 140 Ariz. 528, 531, 683 P.2d 327, 330 (App. 1984), the real estate purchase contract created no rights between the Kuehns and First Magnus.

¶26 The Kuehns next argue that the disclaimer of the property value in the loan agreement was "boiler-plate language" and that the trial court erred in concluding that this language was enforceable because the loan application "[wa]s only two pages long, most of which [wa]s blank space, and the language [wa]s comprehensible." In *Darner Motor*

14

*Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 338 (1984), the supreme court adopted Restatement (Second) of Contracts § 211 (1981) to govern the enforcement of boilerplate language in standardized contracts. Section 211 provides:

> (1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing.

> (2) Such a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.

> (3) Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement.

¶27 In *Darner*, our supreme court recognized that modern commercial business practice depends upon the use of standardized forms, yet also acknowledged that customers often sign these forms without fully being aware of all their terms. *Darner*, 140 Ariz. at 393-94, 682 P.2d at 398-99. In adopting the Restatement section, the supreme court authorized a trial court to enforce a boilerplate term unless the drafter had reason to believe that the adhering party would not have assented to the term. *Id.* at 394, 682 P.2d at 400. This belief that the adhering party would not have assented may be inferred if the language is "'bizarre or oppressive, . . . [if] it eviscerates the non-standard terms explicitly agreed

15

to, or . . . eliminates the dominant purpose of the transaction.'" *Id*. at 391-92, 682 P.2d at 396-97, *quoting* Restatement (Second) of Contracts § 211 cmt. f.

¶28 Here, the clause disclaiming any warranty of value does not appear to be bizarre or oppressive. The disclaimer was not incomprehensible nor did it bind the Kuehns to an unconscionable term; it simply disclaimed any representation on the value of the property they had already agreed to purchase in a separate contract. And, notwithstanding the disclaimer, the Kuehns still received the very loan they had asked for on the terms set forth in the loan agreement. Thus, the disclaimer neither eviscerated the nonstandard terms nor negated the dominant purpose of the transaction. Because the disclaimer is conscionable under the Restatement, the Kuehns are bound by the terms of the loan agreement. *See Angus Med. Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 165, 840 P.2d 1024, 1030 (App. 1992). The trial court therefore did not err in rejecting the Kuehns' argument that the disclaimer was unenforceable.

¶29 The Kuehns also contend the trial court erred in concluding that they had failed to raise an issue of fact on whether First Magnus had violated the covenant of good faith and fair dealing. A covenant of good faith and fair dealing is implicit in every contract. *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). This covenant requires that neither party act to impair the right of the other to receive the benefits that flow from their agreement or contractual relationship. *Id*. at 154, 726 P.2d at 570. As a general rule, an implied covenant of good faith and fair dealing cannot directly contradict

16

an express contract term. *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, ¶14, 46 P.3d 431, ¶14 (App. 2002). Accordingly, "the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to." *Rawlings*, 151 Ariz. at 154, 726 P.2d at 570.

¶30 As noted above, the parties agreed that First Magnus would lend the Kuehns $220,000. But the parties did not agree that First Magnus would provide the Kuehns an appraisal. Instead, the agreement expressly disclaimed any representation on the value of the property, a disclaimer we have already upheld as valid. Because First Magnus's contract obligation did not extend to providing a valid appraisal, the trial court did not err in concluding the Kuehns had failed to raise any issue of fact on whether First Magnus had violated the covenant of good faith and fair dealing implicit in the loan agreement.

## ATTORNEY FEES

¶31 In its motion for summary judgment on the contract claim, First Magnus asked the court for attorney fees pursuant to either A.R.S. § 12-341.01(A) or § 12-341.01(C). The court granted the request, noting, "[a]s this is a contract matter, defendants are entitled to fees and costs" pursuant to § 12-341.01.

¶32 The Kuehns argue that the trial court abused its discretion under § 12-341.01(A) by awarding First Magnus attorney fees, arguing their claims were "novel" and "meritorious." The Kuehns further contend that the trial court's findings are insufficient to merit an award under § 12-341.01(C). An award of attorney fees pursuant to § 12-341.01

17

is left to the sound discretion of the trial court, whose decision we will not reverse absent an abuse of that discretion. *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, ¶27, 963 P.2d 334, ¶27 (App. 1998).

¶33 Section 12-341.01(A) permits a trial court to award reasonable attorney fees to the successful party in a contested contract action. In doing so, a court may consider a number of factors, including the merits of the unsuccessful party's claim. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). Because the trial court granted judgment to First Magnus on the contract claim and could have found that the *Associated Indemnity* factors favored an award of fees, the court did not abuse its discretion in awarding attorney fees to First Magnus. And because we affirm the award of attorney fees under § 12-341.01(A), we do not consider the Kuehns' argument under § 12-341.01(C). *See Uyleman v. D.S. Rentco*, 194 Ariz. 300, ¶27, 981 P.2d 1081, ¶27 (App. 1999) (decision to award prevailing party attorney fees will be affirmed if it has any reasonable basis).

## CONCLUSION

¶34 Because the trial court did not err in granting First Magnus's motions for summary judgment and did not abuse its discretion in awarding attorney fees to First Magnus as the prevailing party in a contract claim, we affirm. We also grant First Magnus reasonable attorney fees on appeal pursuant to § 12-341.01(A), upon its compliance with Rule 21, Ariz. R. Civ. App. P., 17B A.R.S.

_____

JOSEPH W. HOWARD, Judge

CONCURRING:


_____

M. JAN FLÓREZ, Judge



_____

JAMES A. SOTO, Judge*


*A judge of the Santa Cruz County Superior Court authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed February 25, 2004.