NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE LEGAL
PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RODNEY C. SANDS, *Plaintiff/Appellant*,

*v.*

BILL KAY'S TEMPE DODGE, INC., dba TEMPE DODGE CHRYSLER
JEEP KIA; DAVE ZINKEL, *Defendants/Appellees*.

No. 1 CA-CV 13-0051
FILED 3-20-2014

Appeal from the Superior Court in Maricopa County
No. CV2010-033143
The Honorable Robert H. Oberbillig, Judge

**REVERSED IN PART; AFFIRMED IN PART; VACATED IN PART;
REMANDED**

COUNSEL

Baker & Baker, Phoenix
By Thomas M. Baker

*Counsel for Plaintiff/Appellant*

Hammond & Tobler, P.C., Tempe
By Doug Tobler

*Counsel for Defendants/Appellees*

_____

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Maurice Portley joined.

_____

**N O R R I S,** Judge:

¶1 Rodney C. Sands appeals from the superior court's grant of summary judgment on his statutory consumer fraud claim and denial of consequential and punitive damages. He also appeals the attorneys' fee award in favor of Bill Kay's Tempe Dodge, Inc. and Dave Zinkel. For the following reasons, we reverse the superior court's judgment in part, affirm in part, vacate the fee award, and remand for further proceedings consistent with this decision.

**FACTS AND PROCEDURAL HISTORY**

¶2 On September 9, 2010, Sands entered into a purchase contract with Tempe Dodge to purchase a specific 2011 Jeep Grand Cherokee Overland 4x4 ("the Jeep"). Sands gave Tempe Dodge a check for $4,000 as a deposit. Zinkel, as a salesperson and fleet director for Tempe Dodge, told Sands it would take two to three weeks for the Jeep to arrive at the dealership. Sands informed Zinkel he was willing to wait that period of time because he had to have tow brackets custom-made for the Jeep so he could tow it behind his recreational vehicle and he was not planning on traveling until after the Jeep arrived.

¶3 Sands called multiple times to check on the delivery status of the Jeep. Zinkel first told Sands the Jeep was "stuck on a train in Kansas City," then told Sands it was in New Mexico, and later told Sands it was in a train yard in Phoenix. Sands then decided to go to the dealership to talk to Zinkel, and another salesperson approached him. Sands asked the salesperson if the dealership had a white 2011 Jeep Grand Cherokee Overland, and the salesperson showed him a vehicle with the same vehicle identification number as the Jeep Sands had purchased. Sands told the salesperson he had already purchased that specific Jeep, and the salesperson got Zinkel.

¶4 Zinkel told Sands he could not take possession of the Jeep because the trunk latch was broken and needed to be repaired. Zinkel

also offered to sell a different vehicle to Sands, but Sands declined, saying he would wait for the Jeep to be repaired. Later, Zinkel told Sands that Tempe Dodge would not sell the Jeep at all because it was too badly damaged, but that Tempe Dodge might be able to get a replacement Jeep from a dealership in Las Vegas. At that point, Zinkel again offered to sell Sands a different vehicle, but Sands again declined, stating he had already had the tow brackets custom-made for the Jeep.

¶5 On October 25, 2010, Zinkel returned to Sands the deposit check and purchase contract with "VOID" written across them, stating he was unable to find a replacement Jeep. Sands subsequently learned that on September 27, 2010, Tempe Dodge had received the Jeep and had then sold it to a third party on October 16, 2010 for more than Sands had agreed to pay for it. On January 31, 2011, Sands ultimately purchased a 2011 Jeep Grand Cherokee Overland from another dealership.

¶6 Sands sued Tempe Dodge and Zinkel (collectively, "Tempe Dodge") for breach of contract, seeking, as relevant here, compensatory and consequential damages. Sands requested damages for the difference between the price of the Jeep and the price of the vehicle he ultimately purchased and loss of use damages based on daily rental rates for a comparable vehicle for 122 days.[1] Sands also sued Tempe Dodge for statutory consumer fraud, seeking, as relevant here, punitive damages pursuant to Arizona Revised Statutes ("A.R.S.") section 44-1522 (Supp. 2013).[2]

¶7 Tempe Dodge moved for summary judgment, arguing Sands was not entitled to damages on his consumer fraud claim because the alleged fraud occurred after he signed the purchase contract and Sands did not enter into a subsequent purchase contract for a substitute vehicle from Tempe Dodge. Tempe Dodge also argued Sands was not entitled to loss of use or punitive damages. Sands responded and moved

---

[1]Sands estimated loss of use damages from September 30, 2010, which is approximately the date he would have taken possession of the Jeep had Tempe Dodge delivered it to him, and January 31, 2011, the date he purchased a vehicle from another dealership.

[2]Although the Arizona Legislature amended statutes cited in this decision after the date of Tempe Dodge's breach of the purchase contract, the revisions are immaterial. Thus, we cite to the current version of these statutes.

for partial summary judgment on liability for his breach of contract and consumer fraud claims, arguing Tempe Dodge's breach of the purchase contract was undisputed and he had detrimentally relied on Tempe Dodge's statements in connection with the purchase of the Jeep. The superior court granted Tempe Dodge's motion "as to the claim for consumer fraud and the claim for punitive damages." It further granted Sands's motion in part, finding Tempe Dodge had breached the contract as a matter of law. It found, however, he had "no claim under the contract theory for incidental or consequential damages for loss of use/enjoyment/rental value." Based on the amount in controversy, the court transferred the case for compulsory arbitration for an arbitrator to decide the sole issue of actual damages under the contract theory. *See* A.R.S. § 12-133(A) (Supp. 2013); Ariz. R. Civ. P. 72(b); Ariz. Local R. Prac. Super. Ct. (Maricopa) 3.10(a).

¶8        The arbitrator awarded Sands damages and Tempe Dodge attorneys' fees and costs, resulting in a net judgment for Tempe Dodge. Sands appealed the arbitration award and asked the court to set a jury trial. Tempe Dodge again moved for summary judgment, advising the court that in order to avoid the expense of a jury trial, it would stipulate that Sands's actual damages were $2,527.90 -- the greatest amount of actual damages Sands had requested. Sands agreed that, without loss of use damages, his damages were limited to that amount, but asked the court to reconsider whether he had a claim for incidental or consequential damages. The court refused to reconsider its prior ruling on incidental and consequential damages and granted Tempe Dodge's motion. Both parties requested an award of attorneys' fees pursuant to A.R.S. § 12-341.01 (Supp. 2013). The superior court entered judgment in favor of Sands for $2,527.90 plus costs and awarded Tempe Dodge $16,000 in attorneys' fees.

## DISCUSSION

I.        Summary Judgment in Favor of Tempe Dodge

¶9        On appeal, Sands argues the superior court should not have granted summary judgment for Tempe Dodge on his claim for consumer fraud and request for consequential and punitive damages.[3] Reviewing

---

[3]Tempe Dodge did not cross-appeal from the superior court's grant of summary judgment to Sands on his breach of contract claim. Accordingly, we affirm that portion of the superior court's

the issues de novo, we agree. *See Ochser v. Funk*, 228 Ariz. 365, 369, ¶ 11, 266 P.3d 1061, 1065 (2011) (citation omitted).

### A. Sands's Claim Under the Consumer Fraud Act

**¶10** Sands first argues the superior court should not have dismissed his claim under Arizona's Consumer Fraud Act ("CFA"), A.R.S. § 44-1522 to -1534 (Supp. 2013), because he presented a genuine dispute of material fact that Tempe Dodge committed an unlawful practice under the CFA. We agree.

**¶11** The CFA defines an unlawful practice as:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, *in connection with the sale* or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby . . . .

A.R.S. § 44-1522(A) (emphasis added). "Sale" includes "any sale, offer for sale, or attempt to sell any merchandise for any consideration." A.R.S. § 44-1521(7) (2013).

**¶12** "To succeed on a claim [for] consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn v. Stanley*, 208 Ariz. 124, 129, ¶ 16, 91 P.3d 346, 351 (App. 2004) (citation omitted). Injury occurs when the consumer relies on the false promise or misrepresentation, even if unreasonably. *Id.*

**¶13** Here, Sands presented evidence Tempe Dodge made numerous false statements in an attempt to persuade him to buy a

---

judgment. *See Bogard v. Cannon & Wendt Elec. Co., Inc.*, 221 Ariz. 325, 332-33, ¶ 24, 212 P.3d 17, 24-25 (App. 2009) (citations omitted) (rulings not challenged on appeal considered final and implicitly affirmed).

different vehicle, in what he characterized as a "bait and switch" sales tactic. Although Sands did not buy a different vehicle, he presented evidence he relied on Tempe Dodge's statements by purchasing custom-made tow brackets and delaying shopping at other dealerships for a replacement Jeep. *See* Restatement (Second) of Torts § 525 (1977) ("One who fraudulently makes a misrepresentation of fact . . . for the purpose of inducing another to act *or to refrain from action* in reliance upon it, is subject to liability . . . ." (emphasis added)).

¶14    Despite this evidence, Tempe Dodge argues Sands did not present a genuine dispute of material fact regarding reliance because it made these alleged statements to Sands after he had entered into the purchase contract and, thus, he did not actually rely on anything Tempe Dodge supposedly said. In making this argument, Tempe Dodge relies on *Kuehn*, 208 Ariz. 124, 91 P.3d 346. *Kuehn*, however, is distinguishable.

¶15    There, the plaintiffs agreed to purchase property contingent on obtaining financing. *Id.* at 126, ¶ 2, 91 P.3d at 348. Their lender obtained an appraisal that reported the property had a fair market value that exceeded the amount the plaintiffs needed to finance the property. *Id.* at ¶ 3. After the purchase closed, the plaintiffs learned the appraiser had over-valued the property. *Id.* The plaintiffs had the property evaluated by a second appraiser, and although the second appraiser reported a lower value, the value was still sufficient to satisfy the financing contingency because the property appraised for more than the loan amount. *Id.* We affirmed the superior court's dismissal of the plaintiffs' consumer fraud claim against the lender for lack of reliance, explaining the plaintiffs could not have relied on the appraisal in entering or performing the contract because they were already bound to purchase the property when they received the appraisal. *Id.* at 130, ¶ 20, 91 P.3d at 352.

¶16    Here, unlike the plaintiffs in *Kuehn*, Sands was not bound to buy the Jeep when Tempe Dodge was trying to persuade him to buy a different vehicle. Sands's obligation to perform the purchase contract was conditioned on his inspection and final acceptance of the Jeep. The purchase contract provided:

> RIGHT TO INSPECT - FINAL ACCEPTANCE OF VEHICLE. The Customer acknowledges that he or she will be given an opportunity to thoroughly inspect the vehicle sold hereunder prior to taking delivery and that [by] taking delivery the customer agrees to accept such

> vehicle with any defect or non-conformity. Receipt or delivery of the vehicle sold hereunder constitutes the Customer's acknowledgment that said [vehicle] conforms to this contract and constitutes the customer's unqualified acceptance of the vehicle . . . .

In addition to this clause, the contract had a handwritten notation that stated, "subject to customer approval when car arrives." *Kuehn* is thus distinguishable from this case.

¶17 Further, the statements allegedly made by Tempe Dodge to persuade Sands to buy a different vehicle were made "in connection with" Tempe Dodge's sale of the Jeep to Sands. As noted, *supra* ¶ 11, the CFA states fraud or misrepresentations must occur "in connection with the sale." This is a broad phrase that goes beyond the moment of sale. *C.f. State v. Bews*, 177 Ariz. 334, 336, 868 P.2d 347, 349 (App. 1993) (defining "in connection with" as "a relationship or association in thought" in criminal context (quoting Webster's Third New International Dictionary 481 (1971))); *see also Key Air, Inc. v. Comm'r of Revenue Servs.*, 983 A.2d 1, 8 n.11 (Conn. 2009) (noting cases broadly construing "in connection with" in statutory and contractual contexts). The representations and actions of Tempe Dodge, taken as a whole, were therefore "in connection with" a sale of merchandise under A.R.S. § 44-1522(A).

¶18 Considering the evidence presented by Sands and reasonable inferences from this evidence in a light most favorable to Sands, *see Ochser*, 228 Ariz. at 369, ¶ 11, 266 P.3d at 1065 (citation omitted), Sands presented a genuine dispute of material fact sufficient to go forward on his statutory consumer fraud claim. *See* Ariz. R. Civ. P. 56(a). We therefore reverse the superior court's grant of summary judgment on Sands's consumer fraud claim and remand for further proceedings consistent with this decision.

### B. Consequential Damages

¶19 Sands also argues the court should not have dismissed his request for consequential damages on the breach of contract claim for loss of use of the Jeep. We agree.

¶20 A plaintiff may recover damages for loss of use when the seller fails to deliver goods on the date promised in a contract if the seller knew of the buyer's intended use of the goods at the time of entering into

the contract and the buyer proves the goods would have been used but for the seller's failure to deliver. *Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 259, 735 P.2d 1373, 1382 (App. 1987). The measure of damages for loss of use of a vehicle is the reasonable rental value at the time of the loss; the buyer need not actually rent a substitute. *Id.* The buyer must prove when the goods would have been in use and can recover damages only for that period of time. *Id.* at 259-60, 735 P.2d at 1382-83.

¶21         *Aries* is directly on point. There, the plaintiff purchased a yacht with a June delivery date. *Id.* at 253, 735 P.2d at 1376. The seller delivered the yacht five months late, depriving the plaintiff of its use during the summer. *Id.* at 254, 735 P.2d at 1377. Before agreeing to buy the yacht, the plaintiff had informed the seller of his intended use of the yacht during the summer. *Id.* The court awarded damages to the plaintiff for loss of use, using the reasonable rental value as the measure of damages. *Id.* at 259-60, 735 P.2d at 1382-83.

¶22         Tempe Dodge argues *Aries* does not entitle Sands to damages for loss of use because Sands was not waiting in good faith for Tempe Dodge to cure, and therefore, he merely had an action for breach of contract, rather than delay. We see nothing in *Aries* to suggest the availability of loss of use damages applies only to cases of delay while waiting for the seller to cure. In fact, *Aries* expressly states loss of use damages would "also apply to the failure to deliver the goods on the date promised in the contract." *Id.* at 259, 735 P.2d at 1382 (citation omitted).

¶23         Tempe Dodge also argues "common sense" precludes Sands from recovering for loss of use because he could have taken years to replace the Jeep, resulting in an outrageous amount of damages against Tempe Dodge. We find this argument unpersuasive. First, damages would be recoverable only for the time Sands could prove the goods would have been in use. *Id.* Second, recoverable consequential damages are those "which could not reasonably be prevented by cover or otherwise." A.R.S. § 47-2715(B)(1) (2005). Thus, the law provides safeguards against such unreasonable damages requests.

¶24         Tempe Dodge also argues Sands waived any right to consequential damages based on a provision in the purchase contract precluding incidental or consequential damages. Next to the provision at issue, however, is a space for initials. Sands did not initial the space, possibly indicating he had not agreed to the provision. On remand, if appropriate on a more fully developed record, Tempe Dodge may raise the argument that the alleged waiver is effective.

¶25        Tempe Dodge also argues Sands failed to provide admissible evidence regarding damages.  The superior court did not, however, address the admissibility of Sands's evidence regarding damages and therefore neither will we.  Although Tempe Dodge argued the rental rate information was hearsay and lacked foundation, the superior court did not rule on these objections.  The minute entry only reflects the superior court summarily concluded Sands could not recover loss of use damages. On remand, the superior court may address any evidentiary inadequacies of this evidence.

            C.        Punitive Damages

¶26        Sands also argues the superior court should not have dismissed his request for punitive damages.  We agree.

¶27        Tempe Dodge sought summary judgment on punitive damages, arguing Sands could not recover any punitive damages for the alleged consumer fraud because he had not sustained any actual damages. *See Medasys Acquisition Corp. v. SDMS, P.C.*, 203 Ariz. 420, 423, ¶ 14, 55 P.3d 763, 766 (2002) ("The traditional rule requires an award of actual damages before punitive damages may be awarded . . . .").  Tempe Dodge did not, however, contend that Sands presented insufficient evidence of the requisite level of recklessness, spite, or ill will to withstand summary judgment. *See Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 577, 521 P.2d 1119, 1123 (1974) (punitive damages available if defendant's conduct was "wanton, reckless or show[ed] spite or ill-will or where there [was] a reckless indifference to the interests of others" (citations omitted)). Although the basis for the superior court's ruling is not clear from the record before us, it appears the court may have granted the motion because it had dismissed the consumer fraud claim.  Given that the court should not have dismissed Sands's consumer fraud claim, we likewise reverse the superior court's dismissal of Sands's request for punitive damages and remand for further proceedings consistent with this decision.

II.        Attorneys' Fee Award to Tempe Dodge

¶28        Because we are remanding this matter for further proceedings, we vacate the superior court's attorneys' fee award to Tempe Dodge.  We will, however, address Sands's argument that if Tempe Dodge prevails, it is not entitled to a fee award under A.R.S. § 12-341.01. A party's legal entitlement to attorneys' fees is a question of law.

*Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 26, ¶ 24, 126 P.3d 165, 173 (App. 2006) (citation omitted).

¶29 Sands argues Tempe Dodge is not entitled to attorneys' fees pursuant to A.R.S. § 12-341.01 because the purchase contract contained a provision that only allowed Tempe Dodge to recover fees if Sands breached the purchase contract, which, as Sands points out, did not happen here. We disagree.

¶30 The purchase contract provided:

> In the event of any breach of contract or default by Purchaser that necessitates the filing of a court action, Seller shall be entitled to reasonable attorney's fees and costs in addition to any other recovery by Seller against Purchaser.

Contrary to Sands's argument, this provision does not preclude Tempe Dodge from recovering fees under A.R.S. § 12-341.01 in other circumstances. Fees may be awarded under the statute unless to do so would expressly conflict with the terms of the contractual provision. *See Jordan v. Burgbacher*, 180 Ariz. 221, 229, 883 P.2d 458, 466 (App. 1994) (A.R.S. § 12-341.01 inapplicable "if it effectively conflicts with an express contractual provision governing recovery of attorney's fees"). The provision here does not address Tempe Dodge's entitlement to fees when it, and not the purchaser, has breached the purchase contract. Thus, the provision does not conflict with A.R.S. § 12-341.01, and Tempe Dodge is entitled to attorneys' fees pursuant to that statute if it prevails on remand.

III. Attorneys' Fees on Appeal

¶31 Both parties have requested fees on appeal pursuant to A.R.S. § 12-341.01. Because neither Sands nor Tempe Dodge has yet prevailed, we deny their requests without prejudice. The superior court may consider their competing requests for fees on appeal after determining the prevailing party. *See Hall v. Read Dev. Inc.*, 229 Ariz. 277, 279-81, ¶¶ 7-11, 274 P.3d 1211, 1213-15 (App. 2012) (discussing prevailing party determinations in light of settlement offers).

**CONCLUSION**

¶32 For the foregoing reasons, we reverse the superior court's entry of summary judgment on Sands's consumer fraud claim, affirm its

grant of summary judgment on Sands's breach of contract claim, reverse its dismissal of Sands's requests for compensatory damages for breach of contract and punitive damages for consumer fraud, vacate the fee award in favor of Tempe Dodge, and remand for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
FILED: mjt