NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHAEL CLINE and HANNA CLINE, husband and wife;
AMERICAN POLISH CUISINE LLC dba SOUTHBANK GRILL, an
Arizona legal entity, *Plaintiffs/Appellants*,

*v.*

CONTRACTORS BONDING AND INSURANCE COMPANY,
a licensed insurance company, *Defendant/Appellee*.

No. 1 CA-CV 15-0437
FILED 10-20-2016

Appeal from the Superior Court in Maricopa County
No.  CV2013-008019
The Honorable John Christian Rea, Judge

**AFFIRMED**

COUNSEL

Warnock, MacKinlay & Carman, PLLC, Scottsdale
By Nathaniel Preston, Krista M. Carman
*Counsel for Plaintiffs/Appellants*

Kunz Plitt Hyland & Demlong, Phoenix
By Timothy R. Hyland, Connie T. Gould
*Counsel for Defendant/Appellee*

_____

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Don Kessler joined.

_____

**H O W E**, Judge:

¶1        Appellants Southbank Grill ("Southbank") and Michael and Hanna Cline appeal the trial court's granting summary judgment in favor of Contractors Bonding and Insurance Company ("CBIC") for claims of consumer fraud and reasonable expectations. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        In 2008, Southbank reached out to an insurance agency to help it obtain the liability insurance that its landlord required for its restaurant. The agency looked to obtain that insurance from CBIC, which included in the insurance application a two-page "Restaurant/Liquor Questionnaire" for Southbank to complete. The questionnaire addressed a vast range of matters related to the restaurant's business, including property information, clientele information, and the restaurant's practices for alcohol service. The questionnaire advised that CBIC relied on the information provided and that the application's submission was to "induce CBIC to issue insurance" to the applicant. Southbank completed the application and CBIC subsequently provided a quote for a commercial general liability insurance policy, which specifically noted that liquor liability was excluded in the proposed coverage. Southbank accepted the policy.

¶3        Two years later, Southbank again needed liability insurance and sought the assistance from the same insurance agency. As it did in 2008, the agency turned to CBIC, which sent the same restaurant and liquor questionnaire with its application. CBIC ultimately issued the commercial general liability policy to Southbank, which the policy classified as a "restaurant-alc < 30% w/tbl sv," apparently meaning a restaurant that makes less than 30 percent of its revenue from table service of alcohol. On the sixty-eighth page of the insurance policy packet—but the first page of the exclusions section—the policy contained a liquor liability exclusion. This exclusion declined coverage for bodily injury "for which any insured may be held liable for any reason if . . . causing or contributing to the

intoxication of any person." Although CBIC provided the insurance agency an acknowledgment form for the denial of liquor liability coverage, it did not require that the insured see or sign the form.

¶4            In November 2011, Southbank allegedly overserved one of its patrons, who was then involved in a car accident injuring Michael Cline. Cline and his wife subsequently sued the restaurant for nearly $1.5 million in damages. Southbank, in turn, tendered the lawsuit to CBIC and requested coverage. CBIC declined coverage because the insurance policy excluded liquor liability coverage and the lawsuit related to an injury caused by alleged over-service of alcohol. As a result, Southbank entered into a stipulated judgment in favor of the Clines for over $3.5 million, agreeing to assign its rights to pursue claims against the insurance agency, its individual insurance agent, and CBIC relating to the lack of liquor liability coverage to the Clines. Southbank was then forced to close the restaurant.

¶5            In August 2013, the Clines and Southbank sued the insurance agency, the insurance agent, and CBIC for insurance producer negligence, negligent misrepresentation, consumer fraud, and reasonable expectations. Southbank alleged, among other things, that CBIC deceptively called the insurance policy it provided a "commercial general liability coverage," when it actually excluded liquor liability—a large part of the restaurant's risk—and created an expectation of liquor liability coverage by soliciting information about its practices for alcohol service on the application. During discovery, Southbank's principals stated that neither had any direct communication with CBIC during the entire procurement process. One principal further stated that she did not "even look at the front page of the policy" when Southbank received it, but that if she had read the liquor liability exclusion, she would have understood that it meant CBIC would not provide coverage for related risks. However, the principal asserted that she did not know separate liquor liability existed or was required. Instead, she stated that she believed a general liability insurance policy covered all risks Southbank was exposed to. Had she known about the need for separate liquor liability, she stated, she would have purchased it.

¶6            CBIC moved for summary judgment on all counts against it, arguing that Southbank could not show the elements necessary to sustain any of the claims. Regarding consumer fraud, CBIC argued that it did not make any misrepresentations to Southbank because Southbank and CBIC never communicated directly. CBIC also urged that even if CBIC represented something to Southbank, the fact that Southbank failed to even review the policy upon receipt precluded the argument that it relied on

anything related to the coverage it provided. Further, CBIC argued, because Southbank's principal testified that she understood the meaning of the liability exclusion when she read it, Southbank could not argue that the policy expressly or impliedly guaranteed indemnity for the risk of selling alcohol at its restaurant.

¶7        Regarding Southbank's claim under the doctrine of reasonable expectations, CBIC similarly argued that the claim could not survive because it did not make any representations to Southbank. CBIC argued that Southbank's expectation was based solely on its erroneous assumption that the policy included coverage against all risks, which was insufficient to sustain the claim. For all claims, CBIC submitted that because the insurance agency and agent were not agents of CBIC but instead Southbank's brokers, their failure to adequately inform Southbank of the liquor liability requirement or that their policy excluded it could not be imputed to it.

¶8        Although Southbank conceded that no genuine dispute of material fact existed to sustain the negligent misrepresentation claim, it argued that such a dispute did exist regarding consumer fraud and reasonable expectations. For both claims, Southbank argued that several of CBIC's actions misled it to believe that the restaurant was indemnified from all risks—including liquor-related ones—and created a reasonable expectation of that. Specifically, Southbank argued that the questionnaire included in the application solicited detailed information about Southbank's practices for alcohol service that would cause a reasonable consumer to assume that CBIC would be providing coverage for risks related to that information. Further, Southbank argued that by calling the insurance policy a "commercial general liability policy," CBIC misrepresented and falsely promised that all applicable liability concerns were covered. In addition, Southbank posited that CBIC engaged in concealment of a material fact because it "buried" the liquor liability exclusion on the sixty-eighth page of a nearly one-hundred-page policy, where other exclusions were more conspicuously noted. Southbank argued finally that having a form to acknowledge the declination of certain coverage but not actually requiring that it be signed constituted an unfair practice.

¶9        After taking the matter under advisement, the trial court granted the motion for summary judgment and entered judgment in CBIC's favor pursuant to Arizona Rule of Civil Procedure 54(b). Southbank then moved for reconsideration, which the trial court denied. Southbank timely appealed.

## DISCUSSION

¶10 Southbank argues that the trial court erred in granting summary judgment on the issues of consumer fraud and reasonable expectations. We review the trial court's granting of summary judgment de novo, viewing the evidence and all reasonable inferences in the light most favorable to the party opposing summary judgment. *Murray v. Farmers Ins. Co. of Ariz.*, 239 Ariz. 58, 66 ¶ 26, 366 P.3d 117, 125 (App. 2016). Summary judgment is appropriate when no genuine dispute exists regarding any material fact and the moving party is entitled to a judgment as a matter of law. Ariz. R. Civ. P. 56(a). In other words, summary judgment is proper if the facts produced to support a claim have so little probative value that, given the amount of evidence required, reasonable people could not agree with the conclusion advanced. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Because Southbank has not shown that CBIC made any promise or material misrepresentation about liquor liability in its policy, the trial court did not err by granting summary judgment.

¶11 To succeed on a claim of consumer fraud, a party must show a false promise or misrepresentation made in connection with the sale or advertisements of merchandise—which includes services—and consequent and proximate injury resulting from that promise. *See* A.R.S. §§ 44–1522, –1521(5); *see also Kuehn v. Stanley*, 208 Ariz. 124, 129 ¶ 16, 91 P.3d 346, 351 (App. 2004). An injury occurs when a consumer relies, even if unreasonably, on false or misrepresented information. *Kuehn*, 208 Ariz. at 129 ¶ 16, 91 P.3d at 351. The test to determine whether a representation is misleading is whether the least sophisticated reader would be misled, taking the meaning and impression from all that is reasonably implied. *Madsen v. W. Amer. Mortg. Co.*, 143 Ariz. 614, 618, 694 P.2d 1228, 1232 (App. 1985).

¶12 Here, no genuine dispute of material facts exists regarding whether CBIC committed consumer fraud because Southbank has not alleged that CBIC made a misrepresentation in connection with the sale of its services. Southbank admitted that it did not communicate with CBIC during the entire insurance procurement process. Nothing in the record suggests that CBIC otherwise communicated, orally or in writing, that it would or did include liquor liability coverage in the policy it issued to Southbank. That CBIC solicited information about the restaurant's operations, including an entire page on its practices for alcohol service, does not amount to a false promise or misrepresentation. The questionnaire did only what Southbank purports it did—solicit factual information. It noted that the information sought would be relied upon by CBIC to "induce" it to

5

issue an insurance policy to the applicant. Indeed, insurers rely on the information provided on its applications in deciding whether to accept a risk. *Cf.* A.R.S. § 20–1109 (recognizing an insurer's ability to not accept a risk after reviewing an application and allowing the insurer to deny coverage if it can prove that acceptance was based on false information provided by an insured in certain situations). The questionnaire did not bind CBIC to provide liability coverage for everything encompassed by the responses; to find otherwise would defeat the purpose of an application.

¶13 Southbank's claim that CBIC concealed a material fact and otherwise engaged in misleading unfair practices also fails. First, one of Southbank's principals admitted that when Southbank received the policy from CBIC, she did not even look at the first page, much less read its entirety. Thus, whether the liquor liability exclusion was on the first or last page of the insurance packet would not have mattered because she would not have seen it. Second, if Southbank had read the policy, it could not argue that the exclusion was concealed because it was clearly noted on the first page of the "exclusions" section of the general liability policy. Additionally, the principal admitted that if she had read the exclusion, she would have understood that it meant that CBIC would not be liable for risks relating to alcohol. Similarly, because Southbank did not read the policy, its argument that classifying the restaurant as one with "alc < 30% tbl sv" led it to reasonably believe that the policy insured against liquor liability is unavailing because it did not see the classification. Finally, the policy's designation as a "commercial general liability policy" does not create the impression that all potential liabilities are covered. Accordingly, because Southbank failed to show that CBIC made any representations to it, much less misrepresentations, the trial court did not err in granting summary judgment.[1]

¶14 Southbank also argues that the trial court erred by granting summary judgment in CBIC's favor for the reasonable expectations claim. The reasonable expectations doctrine relieves an insured from certain agreement provisions that "he did not negotiate, probably did not read, and probably would not have understood had he read them," if the drafter had reason to believe the insured would have rejected the agreement if the insured had known about the term. *State Farm Fire & Cas. Ins. Co. v. Grabowski*, 214 Ariz. 188, 192 ¶ 14, 150 P.3d 275, 279 (App. 2007). But the

---

[1] Because we conclude that CBIC did not make any representations to Southbank that the issued policy protected it against liquor liability, we need not address CBIC's argument that the insurance agency had actual notice of the exclusion, which was imputed to Southbank.

doctrine nonetheless requires more than the insured's fervent hope that coverage exists and therefore only applies under certain limited circumstances. *Id.*

**¶15**        A court may decline to enforce an unambiguous boilerplate term in a standardized insurance contract only in situations where: (1) the contract terms cannot be understood by an average reasonably intelligent consumer who might check on his or her rights; (2) the insured did not receive full and adequate notice of the term in question and the provision is either unusual, unexpected, or emasculates apparent coverage; (3) some activity reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured; or (4) some activity reasonably attributed to the insurer induced a particular insured to believe that he or she had coverage, although such coverage is expressly and unambiguously denied in the policy. *Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266, 272–73, 742 P.2d 277, 283–84 (1987).

**¶16**        Here, no genuine issue of material fact exists to sustain Southbank's claim against CBIC under the reasonable expectations doctrine. Southbank cannot show that it would not have understood the exclusion if it had read it because its principal admitted that if she had read the exclusion, she would have understood its implications. Additionally, the record shows that Southbank and CBIC did not have any communication during the insurance procurement process. Without having communicated, Southbank cannot show that CBIC had reason to believe that Southbank would have rejected the policy based upon the exclusion. In fact, Southbank's principal testified that if she knew she needed separate liquor liability insurance, she would have purchased it, not that she would have rejected the policy CBIC provided.

**¶17**        Moreover, Southbank has not established any of the four situations outlined in *Gordinier*. First, the policy's liquor liability exclusion is not written in such a way that the average reasonably intelligent consumer may not understand it. The exclusion clearly stated that coverage would not be provided for bodily injury for which the insured may be held liable for causing or contributing to the intoxication of a person. Southbank's principal stated that she would have understood this liability exclusion had she read the policy. Second, even if Southbank did not receive a copy of the insurance quote from its insurance agent, nothing suggests that the liquor liability exclusion provision was unusual, unexpected, or emasculating of apparent coverage. *See* Couch on Insurance 3rd Ed. § 132:56 (stating that commercial general liability insurance policies typically exclude coverage for injuries arising out of the sale of alcohol). Finally,

nothing reasonably attributed to CBIC created an objective impression of coverage or induced Southbank to believe it had liquor liability coverage. Southbank points only to CBIC's provision of a restaurant insurance application and failure to require acknowledgement of the rejection of liquor-related risks to show an impression of coverage. But the application itself and the policy ultimately issued do not constitute or include any promise to provide coverage for the reasons stated above. Thus, the trial court did not err in granting summary judgment in CBIC's favor.

¶18        Southbank requests its costs and attorneys' fees on appeal pursuant to A.R.S. § 12–341.01. CBIC also requests its costs and attorneys' fees on appeal pursuant to A.R.S. §§ 12–341 and –341.01. In our discretion, we deny both requests for fees, but grant CBIC its taxable costs pursuant to A.R.S. § 12–341 and upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶19        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA